93 So.2d 575 (1957)
George BELL, Appellant,
v.
STATE of Florida, Appellee.
Supreme Court of Florida, En Banc.
March 13, 1957.
*576 Robert M. Leite and William D. Green, Perry, for appellant.
Richard W. Ervin, Atty. Gen., and Jos. P. Manners, Asst. Atty. Gen., for appellee.
THORNAL, Justice.
Appellant Bell seeks reversal of a judgment of conviction and sentence to death pursuant to a jury verdict finding him guilty of the crime of rape.
The principal point for our consideration is the matter of the competency of the nine-year old prosecutrix coupled with the manner in which her testimony was elicited by the State Attorney.
A detailed delineation of the unpleasant facts is not essential to our conclusion. The alleged victim of the crime was the nine-year old daughter of the defendant. She was the principal prosecuting witness. In actuality her testimony was essential to the State's case. Without it the jury could not have found appellant guilty of the crime. When she was offered as a witness, appellant's counsel objected to her competency. We mention hereafter the results of the preliminary examination testing her competency. In the course of the examination of the child by the State Attorney on the merits of the case, after she had been held competent to testify, much of the critical testimony was obtained by obviously leading questions. Many of these were objected to by counsel for the appellant. The questions were nonetheless permitted. The jury brought in a verdict of guilty without recommendation of mercy. Appellant was sentenced to pay the supreme penalty by the judgment of the trial court. Reversal of this judgment is here sought.
*577 On the points which we here consider, the appellant contends that the child was not shown to be competent to testify and that the leading questions produced such damaging evidence that he is entitled to a reversal.
The State, of course, contends that the competency of the child was adequately established and that the guilt of the appellant was clearly supported by the evidence.
The crime charged is atrocious and repulsive. The relationship between the appellant and the young prosecutrix only serves to underscore the heinousness of the accusation. However, the odium of the charge cannot be considered as an element in the determination of guilt. The proper administration of justice requires a fair trial conducted in accord with traditional concepts of our jurisprudence. Among these governing rules are those dealing with the competency of witnesses and the orderly processes for presenting evidence for the consideration of judge and jury.
The appellant here has been convicted and sentenced to death almost entirely on the testimony of his little nine-year old daughter, the prosecutrix. A year before the alleged occurrence the child with five small brothers and sisters had been abandoned by her mother to the care of the appellant father. Immediately after the appellant was placed under arrest, the child was delivered into the custody of her mother and an aunt and uncle, all of whom were admittedly antagonistic to appellant. She remained under this influence for some time immediately prior to the trial. Out of this atmosphere of ill-will and antagonism the little girl was sent to the witness stand to testify to the details of the offense.
Appellant's counsel questioned her competency. Her answers revealed her to be a nine-year old still in the first grade in school. She had never been taught the difference between telling lies and telling the truth. She had never gone to church. She didn't even know what an oath was. Just prior to taking the witness stand the State Attorney in private conference had told her that she "would go to a penitentiary" if she told a story. Finally the State inquired, "You know not to tell a lie don't you?" The child replied, "No, sir." The young witness testified in "the shadow of the penitentiary" rather than in the wholesome light of moral and spiritual suasion to tell the truth.
The prime test of testimonial competency of a young child is his intelligence rather than his age. In addition the infant witness should possess a sense of obligation to tell the truth. Sensibility to this obligation under his oath is one of the turning factors. Fear of temporal punishment may be considered as producing a sort of compulsory veracity. However, we lean to the view that there is really no substitute for the spiritual and moral consciousness that should be the basic inducement to all witnesses to speak the truth.
We are aware of our numerous decisions which accord to the trial judge a very broad discretion in determining the competency of witnesses. It is not, however, a discretion without bounds. It is a sound judicial discretion subject to appellate review. We are not here prepared to hold that the able and long-experienced trial judge who presided in this case abused his discretion. His extensive contributions to the cause of justice would certainly suggest the contrary. However, when considered against the background of ill-feeling and animosity against the appellant to which this pliable, impressionable and unfortunate child had been subjected, we cannot avoid the conclusion that the evidence of her competency was far from sufficient to suggest that she was in any measure mentally or morally equipped to stand up under the pressure of the repeated leading questions of the aggressive prosecuting attorney *578 who had been the one to impress upon the child that the penitentiary could be her lot if she failed to speak the truth.
Bearing in mind the serious question as to the competency of the young prosecutrix and adding to it the atmosphere in which she testified, her temperament, her lack of experience and actual ignorance, the repeated leading questions of the able prosecutor assume unusual potentials for depriving this appellant of a trial comporting with the requirements of fairness that our Constitution guarantees to the guilty as well as to the innocent. Our view is not to be construed as any disparagement of aggressiveness on the part of those officials charged with the duty of enforcing the criminal laws. However, we should bear in mind that unlike the legendary cat, a man has only one life to surrender. When the State's executioner sends the lethal charge through his body, there is an element of finality which impresses upon us the essentiality of making certain that he is being punished only after he has been accorded every full measure of justice and fair trial that our system demands.
It appears to us that this record is permeated and riddled with improper leading questions that literally "pulled the switch" to the electric chair. Time and again the damning questions pointing to the guilt of appellant were so framed that the young witness merely had to respond "Yes" or "No". Throughout the examination of the child the State's questions "furnished their own answers". Actually, in this line of interrogation do we find the only direct evidence of guilt. When considered in isolation, we might be inclined to view the holding with reference to the competency of the young witness as being within the orbit of discretion available to the trial judge. It is in the ultimate our holding that the improper interrogation compounded the hazard involved in her obviously questionable competency.
In view of the responsibility placed upon us by Section 924.32(2), Florida Statutes, F.S.A., whereby in a capital case we are charged with the duty to review the entire evidence to determine if the interests of justice require a new trial, we are compelled in this instance to conclude that a new trial is demanded in order that the ends of justice might be served.
The judgment appealed from is reversed and the cause is remanded for a new trial.
Reversed and remanded.
HOBSON, DREW and O'CONNELL, JJ., concur.
THOMAS, Acting C.J., ROBERTS, J., and GILLIS, Associate Justice, dissent.
GILLIS, Associate Justice (dissenting).
This is an appeal from a judgment of conviction and sentence to death based upon a verdict of guilty without recommendation of mercy of the heinous crime of rape, the victim being the nine-year-old daughter of the defendant.
Errors assigned are six in number, the first three of which question the propriety of the rulings admitting the testimony of the victim, the fourth questioning the propriety of the admission of the testimony of the witness Sauls, an executive officer of the law, the fifth questioning the propriety of the denial of the motion for a new trial, and the sixth and final questioning the propriety of the denial of the motion for the appointment of psychiatrists under Chapter 29881, Acts of 1955, § 917.04 et seq. F.S. 1955, F.S.A.
Assignments 1 through 4 may be grouped together for consideration and disposed of contrary to appellant's contention upon the theory that the competency of a person of tender years to testify, the manner of interrogation and the admissibility of the testimony of such a witness are within the discretion of the Court, the probative force of the testimony being for the consideration *579 of the jury. See Clinton v. State, 53 Fla. 98, 43 So. 312.
As to the testimony of the witness Sauls claimed to have been erroneously admitted because negative in nature, it is sufficient to say that negative testimony if relevant is admissible although sometimes regarded as of little weight. Here the relevancy is apparent as touching matters testified to by the defendant in his accounting for the injury to the child. The specific objection interposed to the question propounded by the State "Was he able to show you a rope?", calling for an expression of the opinion of the witness, although technically subject to the objection may not reasonably be said to have prejudiced defendant's case, followed immediately as it was by a proper question to which no objection was interposed and to which the same negative answer was given.
The fifth assignment  that the Court erred in denying defendant's motion for a new trial  brings us to a consideration of the sufficiency of the evidence to support the verdict.
The record reflects a sordid story. To recite the details here would serve no purpose but to sully the judicial page. The trial was under the supervision of an able Judge of many years' experience who saw and heard the witnesses and who approved the verdict. There is nothing in the record to indicate that the jury was influenced other than by the evidence. They were the sole judges of the weight of the evidence and the credibility of the witnesses. It may well be that they were impressed by the defendant's own account of his discovery that the child had been injured, the time of his discovery, his first statement to his neighbor to the effect that the child must have been violated by a playmate, the later theory that the injury had been inflicted by falling on the root of a chinaberry tree, and that the statement of the child to the same effect was made while in the presence of the defendant and under his domination and after he had threatened to punish her. The doctor who examined the child in the early morning hours testified that she made no statement as to how she had been injured.
The sixth and last assignment is that the Court erred in refusing to grant defendant's motion seeking the application of Chapter 29881, Acts of 1955.
The State questions the constitutional validity of the statute because of the insufficiency of the title of the Act and the sufficiency of the allegations of the motion.
In recognition of the rule that the question of the reasonableness, expediency, justice, or propriety of an Act within constitutional bounds is exclusively for the legislative department of our government, not subject to revision or control by the courts because contrary to the principles of natural justice or based upon conceptions of morality with which the courts may not agree, and confining our observations of the Act in question to a simple and respectful suggestion that it probably marks the matriculation of Florida into that new and apparently growing school of thought whose leaders are of high intellectual quality, imbued with the idea and spreading the doctrine that all those who commit criminal offenses are mentally deficient and must not be held accountable. Such at least is the general import of the Act in question, governing as it does all classes of crime from simple assault to murder and rape. Under a literal interpretation of the statute the petty thief, the vagrant, may if declared a sexual psychopath be absolutely immune to punishment. However, a determination of the constitutional validity of the statute upon any of the grounds urged by the State is unnecessary to a disposition of the case. Assuming the statute to be valid and here applicable, we are of the view that the motion based thereon is insufficient in that it contains no statement "setting forth facts tending to show that such person is a criminal sexual psychopathic person" (emphasis supplied). No mention of mental disorder, simply statements *580 of counsel based upon statements to them, all to the effect, charitably expressed and in the language of the street, that the defendant was a sort of social wolf with an inordinate sexual appetite. So radical a departure from the time-honored test of criminal responsibility  the consciousness of right and wrong  as represented by the statute involved requires a sounder basis than here relied upon.