DAYTON, ORVILLE L., Jr. (Ret.), Associate Judge.
Appellant was tried and convicted of the crime of Breaking and Entering with Intent to Commit a Felony, to-wit: Rape. This trial was had in the Circuit Court of the Fifth Circuit in and for Sumter County, on July 21, 1967. He was represented at the trial by privately employed counsel. No motion for new trial was filed. Sentence of six months to ten years was im *882 posed, with credit for 462 days spent in the county jail.
The United States Court of Appeals for the Fifth Circuit on April 9, 1971, determined that the State of Florida provide Appellant with a delayed direct appeal of his conviction or, in the alternative, set aside the conviction and grant him a new trial.
Upon the filing of a petition for writ of Habeas Corpus in this court by appellant, and reply by his official custodian, this Court granted leave to Appellant to file Assignments of Error, Directions to the Clerk, Briefs and Transcript of Record in accordance with the provisions of Part VI, Florida Appellate Rules, 32 F.S.A.
Grounds of Appeal and Assignments of Error were filed as follows: (1) The conviction is not supported by competent evidence, (2) The evidence is not sufficient to sustain the verdict, (3) The conviction is contrary to the law and the evidence, (4) The constitutional rights of the defendant (appellant) have been violated.
This Court has carefully examined the record and briefs of counsel for the respective parties. In this connection this writer is constrained to note that the brief of Appellant does not contribute, as a Force Majeure, to the enlightenment of the Court on the salient points to which this appeal is directed. On the other hand, with a laudable degree of candor and in the finest tradition of the profession, to aid the Court in its search for truth, counsel for Appellee, by written brief and oral argument, has focused the attention of this Court on those matters of record upon which this appeal must turn.
The brief of Appellant is limited to one point on appeal, i. e., the sufficiency of the evidence to sustain the charge. In addition to the sufficiency of the evidence to sustain the conviction as stated by Appellant, counsel for Appellee raises the questions (1) What is the gravamen of the offense charged? (2) Is the testimony of the alibi witness sufficient to establish the innocence of the defendant below? and (3) Did the trial court err in holding that an eight year old child was competent to testify?
Appellee cites numerous cases holding that Appellant is not entitled to “Full Appellate Review” until, as a pre-requisite thereto, a motion for new trial is filed and denied by the trial court. We do not disagree with the contention of Appellee but, as previously noted, because of the extraordinary circumstances in this case it was determined that full appellate review would be granted.
The facts in the case as disclosed by the record show that one Charles Thomas Hunter, also known as Jimmie Lee Hunter, testified as a Court’s witness. Hunter testified that he had a date with the alleged rape victim, a married woman, on the night of July 29, 1966. That he and Appellant, defendant below, went in defendant’s car to the alleged victim’s home, and seeing the lights in the house burning decided to wait until the occupants of the house had gone to sleep. Some two hours later, about eleven p. m., they returned, parked the car about a quarter-mile away and walked to the house. Hunter then testified that the woman came out of the house and walked with him to the car where they had sexual intercourse, and that he left Appellant outside the house during this interval of thirty or forty minutes. Upon their return Hunter testified that the lights in the house were burning and the woman told him she would need some excuse to give her husband in explanation of her absence. Hunter then stated, “I found a little stick and I did hit her with it, and she went on home and I left and went back to the car.”
Here it should be noted that the witness Hunter had been tried for the crime of Rape as a result of the events of this same evening, and had been found guilty of a lesser degree of the offense, to-wit: Assault with Intent to Commit Rape. A *883 charge of Accessory after the Fact of Rape against this Appellant was dismissed by the trial court.
The witness, Hunter, was questioned at some length by the state’s attorney as to a written statement by Hunter made a few days after his arrest. Hunter attempted to repudiate the statement, claiming he made it in fear of being beaten by his jailers. In the course of his testimony, however, Hunter admitted that the statement was in his own handwriting, and that it was made in the presence of a deputy sheriff and a representative of the Florida Sheriff’s Bureau. Hunter further admitted that the officers told him what to write only in the opening and concluding paragraphs, and that the recital of events which occurred on the night in question was solely in his own words. He testified that the officers informed him of his rights, including the right to presence of counsel, and said that although he did not fully understand the nature of his rights at the time he, nevertheless, told the officers that he did understand. Hunter’s testimony is totally devoid of any statement of any threats, duress or intimidation by the officers in whose presence the statement was made. His only statement on this aspect of the matter was that certain unnamed inmates of the jail told him
. “of how of some cases they had over there and things that they had did .... fellows in the jail, there, .... so that’s the reason why I writ (sic) that statement.”
We find that this falls far short of a coerced or otherwise involuntary statement, and there was no error in permitting its use in the course of the trial.
In the statement referred to Hunter said that he and Appellant went to the house on their second trip and saw a tire in a truck parked in the yard, that Appellant took the tire and placed it under the house. Then they entered the house, saw a purse, took it and went outside to count the money. It contained four one dollar bills and some change. They then “Split the bills” and returned to the car. There they decided to return to the house and rape the woman.
“So we got a stick and I say ‘You hit the man and I will hit the woman.’ ”
The husband of the alleged rape victim testified that he went to sleep about 10:30 p. m., and that all he remembered was that he later got up and sat down in a box. “Then I went out and I don’t know anything else.” The record reveals that this man was severely beaten on this night and required several months hospitalization.
The alleged rape victim testified that upon her return home from work on this day she fixed supper and that her husband arrived in his truck about five-thirty p. m. After supper they watched television until about ten-thirty when they retired. She and her husband slept in one bed, and her two children in another bed in the same room.
She testified that at about 12:30 a. m., she woke up, that she was hit across the head, that a man put his hand over her mouth and led her from the room. She screamed, whereupon the man told her that if she obeyed him he would not hurt her, but that if she did not obey him he would kill her. She testified that he took her to an automobile and had sexual intercourse with her, and that she was badly beaten, being struck across the head and on her arm. Upon her return to the house she saw another man, but could not positively identify him as the Appellant. She stated that upon entering the house she saw her husband “all beat up, bloody all over”, and that he was sitting on a clothes hamper. She then put her two small boys in the truck and drove to the home of Mr. Hutto, a neighbor, to call for help. Her home had no telephone.
The alleged victim’s son, Sammy, eight years old, was examined by the trial judge and stated his age, that he was in the third *884 grade at school, went to Sunday School and knew the meaning of an oath to tell the truth. He was permitted to testify.
Sammy stated that he had known Appellant for one year, and positively identified him as the man who was in the house when he turned on the light.
J. P. Hutto testified that he and his wife went to the house about twelve-thirty, in response to the visit of the alleged victim, and upon entering found her husband badly beaten and bloody. He identified a stick as similar to one he had seen in the house at the foot of the bed. He further stated that he remained at the house about an hour and a half.
Scott Bowman, deputy sheriff and former Florida Highway patrolman testified that he made tests of the tire tracks at the place where Appellant’s car was parked with the tires on Appellant’s automobile and that the tracks were made by the same tires. He described his training in the method of making such tests, and the procedures followed in this instance. He further identified an exhibit as a tire he had recovered, and stated that Appellant told him where to find it.
Robert Elliott, a half-brother of Appellant, testified that he and Appellant had been playing cards at his home until “twelve or one o’clock.”
The gravamen of the offense charged here is the breaking and entering with felonious intent to commit rape. That Appellant did not assault or rape the alleged victim does not destroy the gravamen of the offense charged.
“Intent, being a state of mind, is not subject to direct proof and can only be inferred from circumstances.” Edwards v. State, 213 So.2d 274 (Fla.App.1968).
We find the evidence sufficient to sustain the charge of breaking and entering with intent to commit rape.
The testimony of the alibi witness did not cover the entire time when the presence of the defendant (Appellant) was required to accomplish the crime, and so is unavailing as a defense. Constantino v. State, Fla.App., 224 So.2d 341.
The examination of the eight year old witness was carefully conducted by the trial judge, and his decision to permit the child to testify was within his sound discretion. Clinton v. State, 53 Fla.98, 43 So. 312 (1907). The prime test of the competency of a young child to testify is intelligence, rather than age. Bell v. State (Fla.1957) 93 So.2d 575. We find no evidence that the decision of the trial judge to permit the child to testify was an abuse of his discretion.
The judgment of conviction and sentence appealed from is affirmed.
LILES, A. C. J., and McNULTY, J., concur.