348 So.2d 1228 (1977)
John DAVIS, Jr., Appellant,
v.
The STATE of Florida, Appellee.
No. 76-1221.
District Court of Appeal of Florida, Third District.
August 2, 1977.
Rehearing Denied September 6, 1977.
Bennett H. Brummer, Public Defender and Julian S. Mack, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen. and Linda Collins Hertz, Asst. Atty. Gen., for appellee.
Before HENDRY, C.J., and PEARSON and BARKDULL, JJ.
PER CURIAM.
Appellant appeals his sentence and conviction for the crimes of involuntary sexual battery and burglary with intent to assault in violation of Sections 794.011(5) and 810.02(2), Florida Statutes (1975), respectively.
Appellant raises two points on appeal, only one of which we need discuss, to-wit:
"Whether the trial court erred in permitting a five year old child to offer testimony where the child was not shown to be competent to testify and where the child's testimony was shown to have been influenced by his parents."
*1229 For the reasons that follow, we must answer the above question in the affirmative.
Prior to the prosecution presenting its case, the court conducted a hearing, outside the presence of the jury, to determine whether the victim's children, Charles Cheatham, age five, and Latonia Cheatham, age six, were competent to testify as to appellant's involvement in the alleged crimes. After questioning the children, the court ruled as follows:
"THE COURT: All right.
"The Court is going to exclude Latonia Sams as a witness.
"She may have the requisite intelligence and understanding but it appears that she is afraid to exercise and at least to this Court that she is unable or unwilling to answer the questions that are posed to her.
"With regard to Charles Cheatham, he does appear to have the intelligence and the ability to respond to questions.
"However, this Court is still concerned as to whether or not he has been influenced by his parent." [Emphasis added.]
The court thereupon decided to question the victim, Jessie Mae Sams, concerning any influence she may have exerted over her son, Charles, to testify in a certain manner.
"Q. (by the Court) Did you remind him what had happened?
"A. (Jessie Mae Sams) He had to tell the truth, yes.
"Q. Did you remind him about some of the events that he might be questioned about?
"A. About John (appellant) and what happened to me, yes.
"Q. You did remind him?
"A. That is all. That is all of what he is supposed to say, well, of how he supposed to say it and who he was supposed to be talking about, I mean, going in and tell the Judge what happened with John.
"That is all.
"I didn't tell him too much more.
"Q. Did you tell him what happened with John?
"A. I mean, he knows already.
"Q. Did you talk to him and remind him?
"A. Well, my husband was out there talking to him, telling him, talking to him.
"Q. You husband was out there talking to him?
"A. Yes.
"Q. About what?
"A. About John, what to tell, what to tell them, to tell the truth, get up, don't be scared, talk loud because they hardly talk.
* * * * * *
"Q. (By Mr. Kaye) Did you in any way put the words in Charles' head as to what he was to tell this Court, or did you leave it up to him to relate what it was he knew?
"A. Well, they know what they had to say, but we kept remind them to talk loud and don't be afraid.
"Q. So whose words would Charles be speaking, his own or words that you taught him?
"A. Well, I told him what, you know, what had happened, no, nothing else.
"Q. In other words 
"A. See 
"Q.  when you spoke with your son the first time that something had occurred?
"A. Well, he say he was going to talk about John Davis.
"I said, `What are you going to get in there and tell the Judge if she asked?'
"He say he will tell them about John Davis.
"Q. Did he tell you what he knows about John Davis?
"A. No.
Well, he didn't tell me anything, no until you came and got him.
"Q. Did you 
"A. Talk in here.
"Q. Well, did you tell your boy what it is you want him to say?
"A. Well, I told him what he is supposed to say.
* * * * * *

*1230 "Q. (Mr. Van Zamft) You brought him down to my office once for deposition; didn't you?
"A. Yes, I did.
"Q. And you brought him back from the deposition; right?
"A. Yes, I did.
"Q. Did you talk to him about what took place at the deposition?
"A. When, today?
"Q. No, afterwards, when you were with him then.
"A. Today, no.
"Q. Not today, but back the day the time of the deposition.
"A. That day?
"Q. Before you came.
"A. Well, my husband talked to him then.
"Q. And today before you came in here and when he came in, you refreshed his memory?
"A. Refresh his memory, I did.
"Q. As to what you did and you reminded him of all the different facts to be sure he remembered them all?
"A. Not everything, I just told him to get up here and tell the truth, what he knew, and talk loud.
"Q. Did you also remind him of some of the facts, certain things, you refreshed his memory as to what had taken place?
"A. Of what had happened, yes, I did."
Thereupon, the competency hearing was terminated with the result that Charles Cheatham was held competent to testify.
After carefully reviewing the record and briefs, we are of the opinion that the trial court abused its discretion in allowing Charles Cheatham to testify at trial in light of a record permeated with instances of undue influence over Charles by his parents.
Both during the competency hearing and at his deposition, Charles continually responded in the affirmative when asked whether his mother had told him "what to say" in court. As can be seen from the above exerpts, Mrs. Sams did not hide the fact that she and her husband had "refreshed" young Charles' memory of the alleged incident any number of times.
While we are well aware of the fact that the competency of a witness is within the judicial discretion of the trial judge, that discretion is not without bounds, and is subject to appellate review. Bell v. State, 93 So.2d 575 (Fla. 1957). Sub judice, it is our opinion that the interests of justice would best be served by granting appellant a new trial, at which time we would hope that the trial judge question young Charles every carefully so as to purge him of all but his own recollections of the incident in question. See Cross v. Commonwealth, 195 Va. 62, 77 S.E.2d 447 (1953).
Accordingly, appellant's conviction and sentence are hereby reversed and remanded for new trial.
Reversed and remanded.