540 So.2d 182 (1989)
David Allen FULLER, Appellant,
v.
STATE of Florida, Appellee.
No. 88-488.
District Court of Appeal of Florida, Fifth District.
March 16, 1989.
*183 James B. Gibson, Public Defender and Glen P. Gifford, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee and Dee R. Ball, Asst. Atty. Gen., Daytona Beach, for appellee.
ORFINGER, Judge.
Defendant appeals his conviction on one count of sexual battery on a person less than 12 years of age[1] and on one count of lewd and lascivious assault upon a child.[2] Because we find the trial proceedings fundamentally infected with such egregious errors as to result in the denial to defendant of his constitutional right to a fair trial, we reverse and remand for a new trial.
Although we find that reversal is ultimately required, certain of defendant's arguments are unpersuasive. Section 90.803(23), Florida Statutes (1987), the statute which permits the introduction of hearsay statements of a child victim of sexual abuse, has been held constitutional, Perez v. State, 500 So.2d 725 (Fla. 5th DCA 1987), approved, 536 So.2d 206 (Fla. 1988), so appellant's contention to the contrary is without merit. Neither do we find error in the manner in which the statute was applied here. Despite some inconsistencies in the testimony of the 8 year old male child victim, the trial court found that the child was available to testify, and he did testify. Defendant argues that the child should have been declared to be unavailable to testify because he was not competent, thus requiring other corroborative evidence of the abuse under the cited statute.
We find no abuse of the trial court's discretion in determining that the child victim was competent to testify. The primary test of an infant witness's competency to testify is the infant's intelligence, not his age, and his sense of obligation to tell the truth. Bell v. State, 93 So.2d 575 (Fla. 1957). "It is the established law of this state that if an infant witness has sufficient intelligence to receive a just impression of the facts about which he or she is to testify and has sufficient capacity to relate them correctly, and appreciates the need to tell the truth, the infant should be permitted to testify." Lloyd v. State, 524 So.2d 396 (Fla. 1988); Williams v. State, 400 So.2d 471 (Fla. 5th DCA), affirmed, 406 So.2d 1115 (Fla. 1981). Determining the witness' competency is within the trial court's discretion. Moreover, the supreme court has rejected the argument that the child must be found competent to testify before the child's out-of-court statements may be found to bear sufficient safeguards of reliability. See Perez v. State, 536 So.2d at 210.
Nevertheless, considerations of fundamental fairness require that we reverse for a new trial because of other serious errors committed at trial. Dr. Harry Gillis, then medical director of the Child Protection *184 Team, had examined the child several days after the alleged assault and was called to testify as a state witness. After having the witness relate the history given him and the results of his examination, the following colloquy took place:
Q (by the prosecutor) Dr. Gillis, do you believe [the child] told you the truth or he fabricated that story?
A I believe [the child] told me the truth.
Q Why do you say that?
A I feel that the boy was very composed when he discussed the history with me. He gave me a very large number of specifics about what happened. I didn't have to pry, so to speak, the information from him. I didn't have to ask him pointed or leading type of questions to invite the answers. He went through these in a very sequential way, used terms I think that were appropriate for perhaps a boy his age. And coupled with what the father told me about the redness around his anus, I feel that the boy was telling the truth.
* * * * * *
Q Do you have any reason to believe that [the child] lied to you?
A No, I don't have any reason to believe he lied to me.
An expert witness may not directly vouch for the truthfulness of a witness. Tingle v. State, 536 So.2d 202 (Fla. 1988) (error to permit counselor and social worker to testify they believed the alleged child victim was telling the truth); Davis v. State, 527 So.2d 962 (Fla. 5th DCA 1988) (reversible error to allow psychologist to testify that alleged child victim was "being frank"); Norris v. State, 525 So.2d 998 (Fla. 5th DCA 1988) (reversing sexual battery conviction on ineffective assistance of counsel grounds where child protection team worker testified without objection that "she had somehow scientifically `validated'" child witness's testimony and this was the only "evidence" the State had to corroborate child's account). It was error to ask Dr. Gillis to vouch for the credibility of the child, and that error cannot be considered harmless.[3]
Additionally, the prosecutor engaged in such inflammatory and impermissible argument as to vitiate the fairness of the proceedings. Although unobjected to, the comments, once made, were of such a character that neither rebuke nor retraction would entirely destroy their sinister character. In Rosso v. State, 505 So.2d 611 (Fla. 3d DCA 1987), the court noted that despite the absence of objections to remarks of the prosecutor in closing argument,
Our assessment of the prosecutor's comments is appropriate because fundamental errors do not require contemporaneous objection to preserve the errors for review on appeal. Despite the lack of repeated objections by Rosso's counsel to the prosecutor's arguments, we may properly consider the impact of these arguments on Rosso's basic right to a fair trial since we find that they amount to fundamental error. The rationale behind the exception waiving objections to fundamental error is that "the improper remarks are of such character that neither rebuke nor retraction may entirely destroy their sinister influence." [Citation omitted].
505 So.2d at 613.
Here, the prosecutor argued that the State should not be punished because its witnesses were not as "shrewd and as cunning and as diabolical" as defense witnesses (the defendant was the only defense witness to testify). Not content with that jab, he suggested that the defendant had lied, because, unlike the State's witnesses, the defendant's story was "the product of a cunning and shrewd mind"; that the defendant had committed a wicked and vile act on the child for which he must be held accountable. To drive the nail in even further, *185 the prosecutor suggested that there was something sinister and improper for defense counsel to reserve opening statement until after the State had presented its evidence, the implication being that the defense would develop its case after it heard the State's evidence. This attack was unwarranted. It is not improper for the defense to request the reservation of opening argument until the State completes its evidence. This is a matter of courtroom procedure which is subject to the broad discretion of the trial court. Hawkins v. State, 199 So.2d 276 (1967), reversed on other grounds, sub. nom. Hawkins v. Wainwright, 408 U.S. 941, 92 S.Ct. 2857, 33 L.Ed.2d 765 (1972). Here, the trial court approved defense counsel's request to reserve opening argument until after the State completed its case. So too was it improper to personally attack defense counsel for cross-examining the child victim. Cross-examining a young child is always a delicate tactical problem for an attorney. There is a constant risk that if one is too harsh or insensitive to the feelings of the child the jury will be antagonized by the examination. Counsel therefore walks a thin psychological line during such examination, but it is improper for the prosecutor to castigate him or attempt to hold him in disrepute before the jury for questioning the young witness so that the jury may determine the witness' credibility and reliability.
One more erroneous ruling by the court deserves comment since a new trial is required. Prior to commencement of the trial, defense counsel moved in limine to exclude any hearsay statements of the child on the ground that the State's notice of such statements prior to trial was inadequate. The notice was inadequate because it failed to reveal the circumstances under which the statements were made so that the court could determine that there were sufficient safeguards of reliability. See § 90.803(23)(b), Fla. Stat. (1987). The trial court indicated that this problem would be eliminated if the child testified, and defense counsel agreed, but they were both wrong. The section requires that the reliability of the statement be determined in addition to the child either testifying or being found unavailable as a witness. The requirement that the court find reliability was not eliminated because the child testified. As a condition of admissibility, the statute requires that the court find that the time, content and circumstances of the statement provide sufficient safeguards of reliability and that the child either testifies or is unavailable as a witness. § 90.803(23)(a), Fla. Stat. (1987). The statute also requires that the court make specific findings of fact, on the record, as to the basis for its ruling on the admissibility of these statements, section 90.803(23)(c), Florida Statutes (1987), which the trial court failed to do here. Upon remand, these statutory requirements must be met.
The judgments of conviction are reversed and the cause is remanded for a new trial.
REVERSED AND REMANDED.
SHARP, C.J., and DAUKSCH, J., concur.
NOTES
[1] § 794.011(2), Fla. Stat. (1987).
[2] § 800.04(1), Fla. Stat. (1987).
[3] This testimony was not objected to at trial. Although the absence of an objection ordinarily precludes appellate review of an alleged error, Norris v. State, 503 So.2d 911 (Fla. 5th DCA 1987) we consider the cumulative effect of this error and others which will be discussed, infra, to be so fundamental as to require reversal. See Nazareth v. Sapp, 459 So.2d 1088 (Fla. 5th DCA 1984); Dukes v. State, 356 So.2d 873 (Fla. 4th DCA 1978).