DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

JOSE LEONARDO COSME, JR.,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2025-0001

_____

May 22, 2026

Appeal from the Circuit Court for Pasco County; Joshua Riba, Judge.

Matthew R. McLain of McLain Law, P.A., Longwood, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Krystle Celine Cacci, Assistant Attorney General, Tampa, for Appellee.


KHOUZAM, Judge.

Jose Leonardo Cosme, Jr., appeals his judgment and sentence on two counts of lewd or lascivious molestation on a victim less than twelve years of age. Because the State improperly bolstered the victim's testimony, we are constrained to reverse for a new trial.

Cosme was charged with the lewd or lascivious molestation of his goddaughter, A.D. At trial, A.D. testified that she believed Cosme was

her father.  She would visit and stay with him often.  She was about eight years old when Cosme began touching her inappropriately.  The abuse, which she described in detail during her testimony, would occur almost every time she visited him.  This continued until, at ten years old, she disclosed the abuse to a school guidance counselor.  She then recounted the abuse to a school resource officer and a child protection team interviewer.  Without any physical evidence of abuse, the victim's allegations were the crux of the State's case against Cosme, and his only theory of defense was that the victim's story was fabricated.

The State presented recordings of the victim's statements through testimony from the child protection team interviewer and school resource officer who interviewed her.  But the State went further by also eliciting testimony from these witnesses to vouch for the victim's credibility.  For example, the child protection team interviewer testified that he observed no signs of deception from the victim; that the victim had no motive to fabricate; that her disclosure, unlike in other cases, did not appear influenced; and that he "found no inconsistencies" in her account.  Then, the school resource officer testified that the victim was successfully truth qualified; that she appropriately answered his questions; that she "knows the difference between telling the truth and a lie"; and that he, from his perspective as a law enforcement officer, "did not see any signs of deception with her."  After that, the State called another officer, who had never had any personal interaction with the victim, to testify based on his professional review of the reports and the victim's interviews that she was "reliable" and "very consistent" and that "each time she gave the account, it was described the same way."  He contrasted her behavior with that of children who lie, opining that she exhibited none of the typical discrepancies.

2

Cosme argues that, in the context of his trial, this testimony constitutes improper bolstering and that the trial court reversibly erred by allowing it. We agree. "It is elemental in our system of jurisprudence that the jury is the sole arbiter of the credibility of witnesses. Thus, it is an invasion of the jury's exclusive province for one witness to offer his personal view on the credibility of a fellow witness." *Davis v. State*, 360 So. 3d 809, 814 (Fla. 2d DCA 2023) (quoting *Sierra v. State*, 230 So. 3d 48, 51-52 (Fla. 2d DCA 2017)). "This principle applies equally in cases where the testimony offered directly comments on the truthfulness of a minor victim." *Smith v. State*, 292 So. 3d 46, 48-49 (Fla. 5th DCA 2020) (collecting cases). Indeed, where a case turns on the credibility of the victim—a common occurrence in molestation cases like this one— improper bolstering can be particularly harmful. *See Johnson v. State*, 177 So. 3d 1005, 1008 (Fla. 1st DCA 2015) ("Improper bolstering of a witness is especially troubling in a case that rests solely on competing witness accounts to establish an element of the crime."); *see also Cavaliere v. State*, 147 So. 3d 628, 630 (Fla. 2d DCA 2014) ("Because the primary evidence against Cavaliere was the victim's testimony, we cannot say that the State has proved beyond a reasonable doubt that the error was harmless.").

"[W]hen a police officer, who is generally regarded by the jury as disinterested and objective and therefore highly credible, is the corroborating witness, the danger of improperly influencing the jury becomes particularly grave." *Davis*, 360 So. 3d at 814 (quoting *Martinez v. State*, 761 So. 2d 1074, 1080 (Fla. 2000)). "Thus, '[w]here a police officer's testimony is used to bolster the credibility of a victim, the error cannot be deemed harmless.' " *Id.* (alteration in original) (quoting *Sierra*, 230 So. 3d at 52); *see also Cavaliere*, 147 So. 3d at 629 ("[E]rrors

3

committed from the improper admission of a police officer's testimony that can be used to bolster the credibility of a victim's trial testimony cannot be deemed harmless." (quoting *Lee v. State,* 873 So. 2d 582, 584 (Fla. 3d DCA 2004))). For example, in *Cavaliere*, 147 So. 3d at 630, this court held that harmful error occurred when a detective improperly vouched for a child victim by telling the jury what truth qualification is, that the child victim had been truth qualified, and that "by looking at her and kind of getting a feel for her I could tell that, you know, she was— she was acting appropriately. This wasn't a joke to her."

Civilians are also prohibited from vouching for the victim's credibility. "Although the prohibitions on civilians vouching for a victim's credibility have not been treated as harshly by the courts, such testimony can still be harmful error." *Cavaliere,* 147 So. 3d at 629 (citing *Rhue v. State,* 693 So. 2d 567, 568 (Fla. 2d DCA 1996)). For example, in *Paul v. State*, 790 So. 2d 508, 510 (Fla. 5th DCA 2001), the court found that an investigator for the child protection team "improperly vouched for the credibility of the victim by stating that the victim was honest, that she heard nothing which would indicate that the victim had fabricated her statements, and that the victim would have no motive for lying." Similarly, in *Fuller v. State*, 540 So. 2d 182, 183-84 (Fla. 5th DCA 1989), the court found that the medical director of the child protection team improperly vouched for the child victim when he testified, "I believe [the child] told me the truth" and "I don't have any reason to believe that he lied to me." (Alteration in original.) There, the court concluded that "[i]t was error to ask [the director] to vouch for the credibility of the child, and that error cannot be considered harmless." *Id.* at 184.

We review the trial court's ruling on the admissibility of evidence for an abuse of discretion, but the trial court's discretion is limited by the

rules of evidence.  *See Smith*, 292 So. 3d at 48.  The State has the burden to show that any error was harmless beyond a reasonable doubt—"or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction."  *State v. DiGuilio*, 491 So. 2d 1129, 1138 (Fla. 1986).  "Application of the [harmless error] test requires not only a close examination of the permissible evidence on which the jury could have legitimately relied, but an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict."  *Id.*

Here, the defense appropriately objected when the child protection team interviewer, Matthew Bonner, testified as follows:

> Q:  And in speaking with [the victim], were you able to discern any sort of motive of her to make this up or anything to that effect?
>
> A:  Like deception?
>
> Q:  Yes.
>
> A:  No.

The court overruled the objection.  This was a clear abuse of discretion.

After the court erroneously allowed this testimony, the State proceeded to severely compound the error.  The State further questioned the interviewer:

> Q:  Okay.  And was [the victim] resolute with her disclosure?
>
> A:  I found no inconsistences.

Then, the State called multiple law enforcement officers who improperly bolstered the victim's testimony.  Deputy Shaun Duval, the school resource officer who interviewed the victim, testified:

> Q:  And were you able to successfully truth-qualify [the victim]?

5

A: Yes. She answered the question appropriately, and the way she interacted and spoke, I feel that she knows the difference between telling the truth and a lie.

. . . .

Q: And throughout your interview with her, did you, as a law enforcement officer, see any signs of deception?

A: No. I did not see any signs of deception with her.

Officer Clifford Williams, who had never even interacted with the victim, testified:

Q: And in your capacity as the Major Crimes detective at the time, did you compare Deputy Duval's report to the report of the subsequent forensic interview of [the victim]?

A: Yes. I believe it was a Mr. Bonner, he completed the forensic, then I had Deputy Duval, and even statements from the guidance counselor, everything had—I mean, she was reliable.

. . . .

Q: And in looking at the two reports of her two interviews, did you find that [the victim] was consistent in what it is that happened to her?

A: Yeah. Very consistent. In the majority of the time if children are lying, they will change things or omit things or there's some type of discrepancy. And each time she gave the account, it was described the same way.

Especially when considered all together, it is undeniable that this improper testimony placed a "cloak of credibility" upon the victim's testimony, thereby usurping the jury's role. *See Cavaliere*, 147 So. 3d at 629-30 (quoting *Lamb v. State*, 357 So. 2d 437, 438 (Fla. 2d DCA 1978)).

The State then further exacerbated the error in closing argument by expressly relying on the improper testimony in order to establish the victim's credibility. For example, the State commented:

6

First we heard from [the victim] herself. Fourteen yesterday. Ten at time of disclosure. Eight to ten at the time Mr. Cosme was molesting her. She got up there and she was open, honest, forthcoming with you. She answered questions from both myself and the defense attorney. She said when she didn't know. She said when she didn't remember.

. . . .

She's never once said, no, he didn't do that, never once. That would have been the easy way to get out of this, not having to be here, to say, no, I don't want to do it, it didn't happen. And that never happened because it did happen. And that is why a child has been consistent for something that happened as long as five years ago, because it happened to her. She remembers unfortunately. But she remembers.

. . . .

As Matthew Bonner told you . . . she was resolute. She was direct. She answered. If there was something—he asked her a ton of questions. . . . And she was open and honest and she answered those questions. . . . She was honest. She was always quick. Shook . . . her head, no, no, no.

These comments in closing again placed the prestige of the government behind the victim's testimony and invaded the jury's factfinding role. *See Johnson,* 177 So. 3d at 1008 ("Improper bolstering occurs when the State place[s] the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness's testimony." (quoting *Spann v. State,* 985 So. 2d 1059, 1067 (Fla. 2008))).

The totality of this improper testimony as well as commentary from the State was especially harmful because there was no physical evidence in this case and therefore the victim's credibility was the pivotal issue for the jury to evaluate at trial. Under these circumstances, we cannot say that the erroneous admission of testimony improperly bolstering her credibility was harmless, and we are compelled to reverse for a new trial.

7

We reject the State's argument that this issue has not been preserved because the defense objected only to Interviewer Bonner's testimony. As explained above, the cumulative effect of the testimony and commentary at issue rendered the preserved error harmful in the particular context of this case. But it appears that the cumulative effect of these errors would likely constitute fundamental error as well. We have previously held that fundamental error occurred when the prosecution presented testimony from a law enforcement officer improperly bolstering the testimony of a witness for the State. *Davis*, 360 So. 3d at 811. Similarly here, the egregious bolstering from multiple State's witnesses, including two law enforcement officers, went "to the foundation of the case . . . and [were] equivalent to a denial of due process." *Id.* at 814 (quoting *F.B. v. State*, 852 So. 2d 226, 229 (Fla. 2003)). And building upon the improper bolstering, the State expressly relied upon the problematic testimony in closing and thereby "engaged in such . . . impermissible argument as to vitiate the fairness of the proceedings." *See Fuller*, 540 So. 2d at 184.

We also reject the State's argument that the testimony regarding the child victim's reliability was appropriately presented to the jury pursuant to the hearsay exception for child victim statements set forth in section 90.803(23), Florida Statutes (2024). This subsection provides for the admissibility of hearsay statements of a child victim under certain circumstances and directs the trial court to hold "a hearing conducted outside the presence of the jury" to determine whether "the time, content, and circumstances of the statement provide sufficient safeguards of reliability." *See* § 90.803(23)(a)(1) (emphasis added). This subsection does not permit witnesses to vouch for the child's credibility in front of the jury—which is what occurred here. Nevertheless, the State

8

incorrectly and unwaveringly maintained throughout this appeal that the testimony in question was appropriate under this hearsay exception. Indeed, at oral argument in this court the State could not even provide a valid purpose for Officer Williams' testimony.

Finally, we address Cosme's argument that he should have been allowed to offer in support of his defense of fabrication that the victim had viewed sexually explicit material. We agree. The record shows that during his own testimony, Cosme proffered the following exchange:

Q: Did you see a video on [the victim's] phone?

A: Yes, I did.

Q: And what did you see?

. . . .

A: So I saw nude photos and videos of her mom, you know, at the time with her then boyfriend doing things that, you know, adults would do, having sex, basically.

And I told her it wasn't a phone that she needed to have in her hand. So I called the mom, I told the mom this is not a phone she should have. The mom then said, okay.

I apologized, took the phone back, and I bought [the victim] her own cell phone.

The court excluded this testimony on the basis that what the victim allegedly saw on the video was not sufficiently similar to her allegations against Cosme. But the victim alleged that Cosme put her on his lap while he was lying down and rocked her back and forth over his erect penis—essentially, mimicking sexual intercourse.

This court has held that testimony that a child victim knew about certain sexual activities "was relevant—in fact, critical—to [the defendant]'s claim of fabrication" and that "[h]owever light the weight of

9

[the] testimony, the jury should have been given the opportunity to evaluate it." *Dixon v. State*, 605 So. 2d 960, 961-62 (Fla. 2d DCA 1992). On remand, Cosme should be allowed to present his proffered testimony in support of his theory of defense. *See Mateo v. State*, 932 So. 2d 376, 379 (Fla. 2d DCA 2006) ("[A]s a general proposition, any evidence that tends to support the defendant's theory of defense is admissible, and it is error to exclude it.").

We recognize the great burden of conducting a new trial, especially in a molestation case where the child victim will need to take the stand again. But where the State has violated the defendant's due process rights so clearly and egregiously, we have no choice other than to order a new trial. We trust that the State will be mindful to avoid the same error again on remand and in other similar cases in the future.

Reversed and remanded for a new trial.

NORTHCUTT and VILLANTI, JJ., Concur.

_____

Opinion subject to revision prior to official publication.