452 So.2d 666 (1984)
Wilbur BOATWRIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. 82-2033.
District Court of Appeal of Florida, Fourth District.
July 18, 1984.
*667 Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Lydia M. Valenti, Asst. Atty. Gen., West Palm Beach, for appellee.
HURLEY, Judge.
Defendant appeals his convictions for grand theft and aggravated assault for which he received two concurrent seven and one-half year sentences. We affirm in part and reverse in part.
During closing argument, the prosecutor stated:
[L]adies and gentlemen of the jury, as difficult as it is, I'm asking you to stand up now, I'm asking you to do something about crime, I'm asking you to do something about [this] type of conduct, I'm asking you to send a message to folks that we're not going to put up with this.
Defense counsel voiced an objection which the trial court overruled. Thereupon, the prosecutor repeated his theme, "I'm asking you to do your job today, here in this courtroom and send these folks a message we're not gonna put up with this kind of stuff." During the rebuttal phase of final argument, the prosecutor again stated, "This is our country, this is our nation, it's time to send 'em  send criminals a message we're not gonna tolerate it any more... ." Defense counsel renewed his objection and, this time, moved for a mistrial. The trial court denied the motion, stating in the presence of the jury, "[I]n my opinion the argument is not an improper argument."
We respectfully disagree with the able trial judge. The "send 'em a message" argument may have some cachet in the political arena, but it is grossly improper in a court of law. Hines v. State, 425 So.2d 589 (Fla. 3d DCA 1982), petition for rev. denied, 430 So.2d 452 (Fla. 1983); Simmons v. Wainwright, 271 So.2d 464 (Fla. 1st DCA 1973). See generally United States v. Modica, 663 F.2d 1173 (2d Cir.1981), cert. denied, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982). It diverts the jury's attention from the task at hand and worse, prompts the jury to consider matters extraneous to the evidence. This type of argument is calculated to inflame the passions or prejudices of the jury and, thus, is prohibited by ABA Standards for Criminal Justice, 3-5.8(c).
Under our law, the prosecutor has a duty to be fair, honorable and just. As put by Justice Sutherland, the prosecuting attorney "may prosecute with earnestness and vigor  indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones." Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). We discussed the prosecutor's role in Martin v. State, 411 So.2d 987, 990 (Fla. 4th DCA 1982), and said that

*668 it is the duty of a prosecutor to seek justice, not merely to convict. We recognize that the tensions of the adversary process and the heat of trial can test an attorney to the limit. Nonetheless, it is imperative that prosecuting attorneys be ever mindful of their awesome power and concomitant responsibility. The tactics and trial strategy of the prosecutor must reflect a scrupulous adherence to the highest standards of professional conduct.
See also Harris v. State, 414 So.2d 557 (Fla. 3d DCA 1982).
The prosecutor's argument in the case at bar constitutes a departure from acceptable practice. That it was stated three times and, on the final repetition, received the trial court's imprimatur, only underscores the egregiousness of the error. Our responsibility is to evaluate the impact of the error. The standard we must apply was articulated in State v. Murray, 443 So.2d 955 (Fla. 1984). There, the court held that
prosecutorial error alone does not warrant automatic reversal of a conviction unless the errors involved are so basic to a fair trial that they can never be treated as harmless. The correct standard of appellate review is whether "the error committed was so prejudicial as to vitiate the entire trial." Cobb [v. State], 376 So.2d 230 at 232. The appropriate test for whether the error is prejudicial is the "harmless error" rule set forth in Chapman v. California, 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967), and its progeny.
Id. at 956.
Applying the harmless error rule to this case, we affirm the defendant's conviction and sentence for grand theft. The evidence of guilt is so overwhelming that we are satisfied that the error is harmless beyond a reasonable doubt. On the other hand, we are unable to make the same finding with respect to the defendant's conviction and sentence for aggravated assault. The aggravated assault allegedly took place subsequent to, and at some distance from, the grand theft. Although both crimes were properly charged in the same information, the evidence as to each is sufficiently distinct to permit separate evaluation. A review of the evidence relating to the aggravated assault simply does not allow us to say that the prosecutorial error was harmless beyond a reasonable doubt.
A second prosecutorial tactic also demands comment. During cross-examination of a key defense witness, the prosecutor skillfully established the differences between the witness's testimony and that of earlier state witnesses. Up to this point, the cross-examination was perfectly legitimate. Then, over defense objection, the prosecutor asked the witness whether each of the earlier witnesses had been lying. This effort to isolate and thereby discredit the witness is improper for a number of reasons. It is elemental in our system of jurisprudence that the jury is the sole arbiter of the credibility of witnesses. Barnes v. State, 93 So.2d 863 (Fla. 1957). Thus, it is an invasion of the jury's exclusive province for one witness to offer his personal view on the credibility of a fellow witness. Bowles v. State, 381 So.2d 326 (Fla. 5th DCA 1980). Moreover, the fact that two witnesses disagree does not necessarily establish that one is lying. Lying is the making of a false statement with intent to deceive. Absent some evidence showing that the witness is privy to the thought processes of the other, the first witness is not competent to pass on the other's state of mind. Therefore, we hold that this part of the prosecutor's cross-examination was improper; the trial court erred in failing to sustain the defendant's objection.
Accordingly, the defendant's conviction and sentence for aggravated assault are reversed and the cause is remanded for new trial.
AFFIRMED IN PART, REVERSED IN PART and REMANDED for NEW TRIAL.
SMITH, CHARLES E., Associate Judge, concurs.
GLICKSTEIN, J., concurs specially with opinion.
*669 GLICKSTEIN, Judge, concurring specially.
The purposes of this concurring opinion are (1) to pass along to the trial judges, prosecutors and defense counsel who practice in this district as well as The Florida Bar some suggestions which have come to mind as a result of the decision of the Supreme Court of Florida in State v. Murray, 443 So.2d 955 (Fla. 1984) and (2) to express some observations as the author of Murray v. State, 425 So.2d 157 (Fla. 4th DCA 1983), which was subsequently quashed in State v. Murray.
The suggestions are these:
1. Prosecutors should now, more than ever, realize that when they violate an individual's constitutional rights, they not only may be admonished by the trial court but should expect to be subject to disciplinary proceedings by The Florida Bar. I have to believe that this is a drastic change in historical direction in Florida that now imposes upon the trial judge, defense counsel and the Bar an equal responsibility. If the trial judges do nothing, then Murray will only be a rhetorical exercise at the expense of defendants' constitutional rights. I believe it was the intent of the Supreme Court that the foregoing responsibility be met because our judicial system is based upon "accountability."
2. Trial judges must shoulder the responsibility of affirmative action in dealing with misconduct by one of two methods, both of which are found in the Integration Rule of The Florida Bar 11.14, Disciplinary Proceedings in Circuit Courts, 35 F.S.A. 137-138. The trial court, or this court on review of the record, may direct the state attorney to move for disciplining the prosecutor. That procedure plainly should now make the state attorney run a very tight ship among his assistants because common sense would dictate to all of those involved in prosecution that the sword of Damocles is properly hanging right above them. The second alternative method is one authored by this writer while a member of the Board of Governors of The Florida Bar which the Board and Supreme Court adopted; namely Rule 11.14(1); which was intended to spell out for the judiciary its responsibility to call for an investigation by the Bar of the alleged misconduct without the judge becoming the actual accuser. Staff counsel of The Florida Bar would then put the disciplinary investigative procedures into motion.
State v. Murray was predicated upon United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), which had not been decided when Murray v. State was decided (which fact I shall discuss hereinafter). In Hasting, the United States Supreme Court concluded that the Court of Appeals had erred because it reversed the conviction as an expression of the reviewing court's supervisory powers without regard for the "harmless error" rule. We did the same thing in Murray v. State, which the Supreme Court of Florida correctly recognized. The difference in the federal judicial system and the system in this state with respect to the attention heretofore given prosecutorial misconduct apparently has been substantial. For example, in State v. Jones, 204 So.2d 515 (Fla. 1967), a typical case perhaps, the Supreme Court of Florida reviewed the comments of this writer on closing argument in the prosecution of a murder case, found them to be proper, and reversed the split decision of this court, in Jones v. State, 197 So.2d 308 (Fla. 4th DCA 1967), which had granted a new trial. Jones is typical of pre-Murray decisions of this state's highest court when determining whether prosecutorial misconduct during closing argument constituted constitutional error; harmless error was not discussed. The United States Supreme Court's opinion in Hasting, however, rests on both the "harmless error" rule and the availability of narrower means for dealing with prosecutorial misconduct. The Court said:
Here, for example, the court could have dealt with the offending argument by directing the District Court to order the prosecutor to show cause why he should not be disciplined, see, e.g., SD Ill Rule 33, or by asking the Department of *670 Justice to initiate a disciplinary proceeding against him, see, e.g., 28 CFR 0.39 et seq. The Government informs us that in the last three years, the Department of Justice's Office of Professional Responsibility has investigated 28 complaints of unethical conduct and that one assistant United States attorney resigned in the face of an investigation that he made improper arguments to a grand jury. Brief for United States 21, n 16. The Court also could have publicly chastised the prosecutor by identifying him in its opinion. See also United States v. Modica, 663 F.2d 1173, 1183-1186 (CA2 1981).
461 U.S. at ___ n. 5, 103 S.Ct. at 1979 n. 5, 76 L.Ed.2d at 104 n. 5. This writer recalls no case of prosecutorial misconduct coming before the Board of Governors of The Florida Bar in the period of 1978 through 1983; and the record in Murray was devoid of any statistics of the "available" alternative for dealing with prosecutorial misconduct.
3. Defense counsel may have the toughest burden of all. Heretofore, they have objected to these constitutional violations because the errors have resulted in reversals of their client's convictions regardless of "harmless error." Now they have the responsibility of dealing with the prospect that their client's case may be hopeless; and that an objection to prosecutorial misconduct may be a useless gesture. On top of the foregoing is the realization that the only purpose of an objection may be to initiate a request from the Bench for an investigation of misconduct by the Bar or an actual accusation by the Bench. If defense counsel and the prosecutor go at each other's throat in the courtroom but are personal friends in their off-hours, this shouldering of responsibility is going to be tough but essential.
4. The Florida Bar must be expected to punish these abuses vigorously, particularly now that all prosecutors are on notice of Murray.
As for my observations about the Supreme Court's decision in Murray, there are four which I wish to express:
1. It seems to me that the "harmless error" principle is a thread that now must visibly permeate every aspect of criminal prosecution. Very little is said about the existing harmless error statute, section 924.33, Florida Statutes (1983), in our opinions, although the Supreme Court of Florida, in Jones v. State, 332 So.2d 615 (Fla. 1976), pointed out the statute in another setting and said:
A careful review of the record convinces us that the evidence, though circumstantial, was so clear and convincing as to leave no reasonable doubt but that Appellant was guilty of the crimes for which the jury convicted him. Where the evidence of guilt is overwhelming, even a constitutional error may be rendered harmless.[5]
[5] Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).
In United States v. Hasting, the court said in discussing Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967):
After examining the harmless error rules of the 50 states along with the federal analog, 28 U.S.C. § 2111 [28 USCS § 2111], the Chapman Court stated:
"All of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial. We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring automatic reversal of the conviction." 386 US, at 22, 17 L.Ed.2d 705, 87 S.Ct. 824, 24 ALR3d 1065 (Emphasis added.)
In holding that the harmless error rule governs even constitutional violations under some circumstances,[6] the Court recognized that, given the myriad safeguards provided to assure a fair trial, and taking into account the reality of the *671 human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial. Brown v United States, 411 U.S. 223, 231-232, 36 LEd2d 208, 93 SCt 1565 (1973), citing Bruton v United States, 391 U.S. 123, 135, 20 LEd2d 476, 88 SCt 1620 (1968); cf. Engle v Isaac, 456 U.S. 107, 133, 134, 71 LEd2d 783, 102 SCt 1558, 1574 (1982). Chapman reflected the concern, later noted by Chief Justice Roger Traynor, that when courts fashion rules whose violations mandate automatic reversals, they "retreat[] from their responsibilities, becoming instead `impregnable citadels of technicality.'" R. Traynor, The Riddle of Harmless Error 14 (1970) (quoting Kavanagh, Improvement of Administration of Criminal Justice by Exercise of Judicial Power, 11 ABAJ 217, 222 (1925)).
Since Chapman, the Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations, see, e.g., Brown, supra, 411 US, at 230-232, 36 LEd2d 208, 93 SCt 1565; Harrington v California, 395 U.S. 250, 23 LEd2d 284, 89 SCt 1726 (1969); Milton v Wainwright, 407 U.S. 371, 33 LEd2d 1, 92 SCt 2174 (1972). The goal, as Chief Justice Traynor of the Supreme Court of California has noted, is "to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without becoming mired in harmless error." Traynor, supra, at 81.
[6] The Court acknowledged that certain errors may involve "rights so basic to a fair trial that their infraction can never be treated as harmless error." 386 US, at 23, 17 LEd2d 705, 87 SCt 824 [827], 24 ALR3d 1065, citing Payne v. Arkansas, 356 U.S. 560, 2 LEd2d 975, 78 SCt 844 (1958) (coerced confession); Gideon v Wainwright, 372 U.S. 335, 9 LEd2d 799, 83 SCt 792, 23 Ohio Ops 2d 258, 93 ALR2d 733 (1963) (right to counsel); Tumey v Ohio, 273 U.S. 510, 71 LEd 749, 47 SCt 437, 5 Ohio L Abs 159, 5 Ohio L Abs 185 (1927) (impartial judge).
461 U.S. at ___, 103 S.Ct. at 1980-81, 76 L.Ed.2d 105-06.
2. It seems worthwhile for trial and reviewing judges to keep in mind the following language from Chapman in their future handling of constitutional violations by prosecutors at trial:
Thus, the state prosecutor's argument and the trial judge's instruction to the jury continuously and repeatedly impressed the jury that from the failure of petitioners to testify, to all intents and purposes, the inferences from the facts in evidence had to be drawn in favor of the State  in short, that by their silence petitioners had served as irrefutable witnesses against themselves. And though the case in which this occurred presented a reasonably strong "circumstantial web of evidence" against petitioners, [People v. Teale] 63 Cal.2d [178], at 197, 45 Cal. Rptr. [729], at 740, 404 P.2d [209], at 220 [1965], it was also a case in which, absent the constitutionally forbidden comments, honest, fair-minded jurors might very well have brought in not-guilty verdicts. Under these circumstances, it is completely impossible for us to say that the State has demonstrated, beyond a reasonable doubt, that the prosecutor's comments and the trial judge's instruction did not contribute to petitioners' convictions. Such a machine-gun repetition of a denial of constitutional rights, designed and calculated to make petitioners' version of the evidence worthless, can no more be considered harmless than the introduction against a defendant of a coerced confession. See, e.g., Payne v. State of Arkansas, 356 U.S. 560, 78 S.Ct. 844 [2 L.Ed.2d 975 (1958)]. Petitioners are entitled to a trial free from the pressure of unconstitutional inferences.
386 U.S. at 25-26, 87 S.Ct. at 829, 17 L.Ed.2d at 711.
3. I earlier mentioned the fact that Hasting had not been decided when this court decided Murray v. State. That fact was not mentioned in the opinion of the Supreme Court, undoubtedly by oversight. I mention this fact because we undertake always to expressly note in our opinions that the trial judge did not have the benefit of a governing decision by an appellate *672 court after the trial court's action which would have materially altered that action. As in the case of the Supreme Court, if we fail to mention the chronology, it is simply an oversight.
4. Creditable and thus credible trial and intermediate appellate court judges would do well, when reversed, to consider, on balance, a saying West Virginians have been heard to express; namely, "Some days you get the bear; and some days the bear gets you." A good-natured rapport up and down the line is also common sense tonic. Recently, this writer shared a conference table with two judges from an intermediate court and supreme court in the same state; and the former affably introduced the latter as "the one who gets to guess last!"