619 So.2d 340 (1993)
Fred HARRIS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 91-2453.
District Court of Appeal of Florida, First District.
May 17, 1993.
Rehearing Denied June 29, 1993.
*341 Nancy A. Daniels, Public Defender, and Nada M. Carey, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Sara D. Baggett, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Fred Harris, Jr., was adjudicated guilty of criminal offenses based on the sale of cocaine and possession of cocaine, and sentenced as a habitual offender to 20 years' imprisonment. He asserts on appeal that the trial court committed reversible error in permitting a deputy sheriff to describe to the jury what they would hear on a partially inaudible audiotape of the alleged drug transaction that gave rise to the charges. We reverse and remand for a new trial.
Deputy Hudson, a narcotics investigator with the Escambia County Sheriff's Department, testified at trial that the charges against Harris arose from an undercover drug operation he set up at an apartment complex. On the day of the alleged buy, he wired a confidential informant with an audio transmitting device, gave him $50 in marked bills, and sent the informant into the apartment complex to attempt to buy drugs from several people he had targeted. Meanwhile, Hudson sat in his car, which was parked close to the complex, and maintained surveillance by listening to the audio device. Hudson stated that he monitored and recorded a conversation between the informant and a person with the nickname "Black Diamond." He then identified State's exhibit 3 as the cassette tape on which he recorded the conversation. The prosecutor asked Deputy Hudson to "set the tape up for [the jury] in terms of what they'll hear." At that point, the following colloquy took place:
MR. BECK [Defendant's attorney]: I object to speculation at this time without specific identification of the voices.
MR. HILL [State's attorney]: Your Honor, it is not speculation, the witness is testifying to what they'll hear on the tape and the Court is aware that some tapes are not as audible as others, and all we are trying to do is lay a foundation so the jury knows what to listen for.
MR. BECK: But there is no identification by this witness that he can identify any of the voices on the tape, the confidential informant or anybody that approaches him. And for him to testify 
MR. HILL: But he monitored it and all  I am not getting  going to get him to repeat what is going to happen on the tape, but rather to set it up in terms of what Mr. Poole does and where he goes and that type of thing.
THE COURT: Proceed. Overruled.
THE WITNESS: The confidential informant makes contacts with the subject inside of the Escambia Arms complex. He asked the subject if Michael Ball or Jet is around and he said no. And the subject informs him that Black Diamond has some dope for sale.
MR. BECK: I object. And ask that he be responsive to the specific question which was "Can you explain the slang." And all he's doing is repeating what the jury will hear.
THE COURT: That is my  he answered the previous question about the slang and the question was to give some synopsis of what the tape portrays and I'll overrule the objection and you may continue.
THE WITNESS: The confidential informant is advised by the person that he made contact with that Black Diamond has dope that he has far [sic] sale and he takes him  and you can hear walking on the tape. And he takes him to a location where he meets with a subject who he refers to as Black Diamond. They, the conversation is then the, the informant wants to know if that's all he has. And you can tell by the conversation that he's looking at something and talking about pieces being small or big. And then he thanks Black Diamond and leaves.
THE COURT: Let me interrupt. That's the witness's account of what he believes happened. You are the intended *342 trier of fact and you are to listen to the tape and reach your own conclusion as to what in fact the tape portrays. So please understand the difference between your function and the function of the witness.
Continue.
MR. HILL: Thank you, Your Honor. At this time, Deputy Hudson, if you will step down and run this.
THE WITNESS: This is some background noise that you may be able to get out.

(Tape played for jury)
Defendant argues on appeal that the trial court's admission of this testimony was error because the state did not lay the proper foundation showing Hudson's competence to interpret the conversation recorded on the tape, and to identify the voice on the tape as that of "Black Diamond."
The general rule regarding admissibility of partially inaudible tape recordings is that such recordings are admissible
unless the inaudible and unintelligible portions are so substantial as to deprive the remainder of relevance; and partial inaudibility or unintelligibility is not a ground for excluding a recording if the audible parts are relevant, authenticated, and otherwise properly admissible. Odom v. State, 403 So.2d 936 (Fla. 1981); Golden v. State, [429 So.2d 45 (Fla. 1st DCA 1983), rev. denied, 431 So.2d 988 (Fla. 1983)]; Steinbrecher v. State, 409 So.2d 510 (Fla. 3d DCA 1982); Gomien v. State, 172 So.2d 511 (Fla. 3d DCA 1965); Matheson v. State, 468 So.2d 1011 (Fla. 4th DCA 1985).
Loren v. State, 518 So.2d 342, 352 n. 4 (Fla. 1st DCA 1987).
In Golden v. State, 429 So.2d 45 (Fla. 1st DCA 1983), this court analyzed whether a trial court had properly allowed the state to visually display an incriminating portion of a written transcript of a tape recording that was admitted into evidence. The court held that the allowance of such display was not reversible error because, under the particular facts of that case, such display did not improperly displace the recording on which the display was based. The court's holding was based, in part, on its determination that the transcript had been properly authenticated prior to its presentation. In discussing authentication, this court recognized two methods that had earlier been set out in Duggan v. State, 189 So.2d 890 (Fla. 1st DCA 1966): (1) the person who prepared the transcript could testify that he witnessed the events recited in the transcript and thus had personal knowledge that the transcript was an accurate rendition of the tape recording; or (2) an expert witness professionally skilled in understanding indistinguishable taped conversations could testify that the transcript was an accurate rendition of the tape recording. 429 So.2d at 52.
Consistent with the authentication requirements discussed in Golden, in Uliano v. State, 536 So.2d 393 (Fla. 4th DCA 1989), the fourth district found a trial court's act of permitting an officer to testify as to the inaudible portions of a tape error because the jury was in as good a position as the officer to determine what could be heard on the tape. While the court determined the error in that case was harmless, it did so because the officer participated in the taped conversation and testified as to what took place during the inaudible portions of the tape based upon his independent knowledge.
These cases make clear that neither written nor oral interpretation of a tape recording is admissible unless such interpretation is properly authenticated by a person having personal knowledge of the contents of the tape recording or by an expert witness skilled in interpreting inaudible tape recordings. In the absence of a showing that the person providing the interpretation possesses some knowledge or skill not possessed by the jury, such interpretation is not relevant evidence and therefore is not admissible.
In the instant case, the tape recording admitted into evidence was, for the most part, inaudible. Thus, a properly authenticated interpretation would have been relevant because it could have assisted the jury in determining the contents of the tape. *343 The interpretation provided by Deputy Hudson was not, however, properly authenticated.[1] Hudson testified that he was not in a position to see the participants in the recorded conversation, that his knowledge of what occurred inside the apartment complex was limited to what he heard on the wire he was monitoring and what the confidential informant told him, and that he relied on the confidential informant's identification of the other party to the conversation and version of what went on. Hudson did not testify that what he heard over the wire was any more audible than that which could be heard from the tape recording, nor did he testify that he had any independent knowledge of Defendant's voice that would enable him to identify the voice on the tape as that of Defendant. In light of Hudson's lack of personal knowledge regarding the contents of the conversation recorded on the tape and Defendant's participation in that conversation, he was in no better position than the jury to determine the contents of the tape recording. Furthermore, the only basis established on the record for Hudson's testimony that Black Diamond was the person whose voice was recorded on the tape was the identification Hudson received from the confidential informant. Clearly, this was hearsay. Because the state failed to lay the proper foundation for admission of Hudson's testimony interpreting the conversation recorded on the tape, the trial court erred in overruling Defendant's objection and admitting this testimony. Since the state has not "presented a prima facie case of harmlessness in its argument," we "need go no further" in respect to our discussion of this point. Ciccarelli v. State, 531 So.2d 129, 131 (Fla. 1988).
Before concluding, we feel obliged to comment on one other issue Defendant raises on appeal. During closing argument, the prosecutor made the following statement:
Ladies and gentlemen, this is a serious case. Not only serious in terms of the defendant but also serious in terms of the community. There is no question that there is a problem out there. And just as no one wants to see an innocent person convicted we certainly don't want to see another drug dealer let back out on the street.
Defendant argues on appeal that the essence of this argument was to beseech the jury to convict him because it would send a message to drug dealers in the community. We agree that this type of "send the community a message" argument is inappropriate in a court of law. See Boatwright v. State, 452 So.2d 666 (Fla. 4th DCA 1984). We do not, however, include this remark as a basis for reversal because defense counsel failed to timely object when it was made. Although the prosecutor crossed the line in making such a statement, we cannot say that it was so prejudicial as to vitiate the entire trial and constitute fundamental error.
REVERSED AND REMANDED.
ERVIN, J., concurs.
WOLF, J., specially concurs with opinion.
WOLF, Judge, specially concurring.
The error in the instant case was not harmless; I, therefore, concur. I write, however, to express my understanding of Ciccarelli v. State, 531 So.2d 129 (Fla. 1988), cited by the majority, and our responsibilities as judicial officers in reviewing criminal proceedings which may contain errors which are harmless. Section 924.33, Florida Statutes, states,
When judgment not to be reversed or modified.  No judgment shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant.
*344 As the majority correctly points out, under Ciccarelli, we are under no obligation to perform a harmless error analysis in situations where the state fails to argue harmless error. I do not read Ciccarelli, however, as absolutely precluding this court from conducting, sua sponte, a full review of the record to determine if an error is harmless.[1] To preclude sua sponte review would promote needless retrials. As judicial officers we have a responsibility to not only prevent unnecessary utilization of judicial resources, but also to maintain public respect for the judicial system. We, therefore, should not reverse cases based on errors which, beyond a reasonable doubt, did not affect the jury verdict, notwithstanding the state's failure to argue that the error is harmless.[2]
NOTES
[1] For purposes of admissibility, Deputy Hudson's oral translation of the tape recording should be treated the same as if such translation were submitted in the form of a written transcript.
[1] Several cases can be read to interpret Ciccarelli as precluding this court from conducting a harmless error analysis if the point is not raised by the state. See, e.g., Johnson v. State, 595 So.2d 132, 136 (Fla. 1st DCA 1992), rev. denied, 601 So.2d 553 (Fla. 1992); Perkins v. State, 585 So.2d 390 (Fla. 1st DCA 1991); Taylor v. State, 557 So.2d 138, 144 (Fla. 1st DCA 1990). But see Shaw v. State, 557 So.2d 77 (Fla. 1st DCA 1990), rev. denied, 569 So.2d 1280 (Fla. 1990). If harmless error existed in this case, I would request this court to go en banc and revisit Johnson, Perkins, and Taylor.
[2] It would appear that a more appropriate procedure would be to require supplemental briefing on the issue of harmless error. This would give both parties an opportunity to address the issue before it is decided by the court.