GROSS, J.
Kevin M. Joseph appeals his conviction of the sale of MDMA, commonly known as ecstasy. We affirm, finding no error in the prosecutor’s cross-examination of Joseph.
Joseph 'was charged with trafficking in MDMA.

The State’s Case at Trial

The state’s case at trial established that Detective Golino of the Port St. Lucie Police Department met with a confidential informant (Cl) to purchase 400 MDMA pills from Joseph, at $9 a pill. The plan was to meet Joseph in a McDonald’s parking lot, with the detective giving Joseph the money for the pills.
The Cl received a phone call and informed the detective that Joseph was on the line. The detective and the Cl then separately drove to the McDonald’s. The Cl parked his car in the parking lot; the detective parked his unmarked vehicle on the other side of the building, and walked to the restaurant.
About twenty minutes later, Joseph pulled into the parking lot and parked next to the Cl’s auto. An individual later identified as Sean Springer was in the passenger seat of Joseph’s vehicle.
Detective Golino then received a phone call from the Cl, which was the prearranged signal that Joseph had displayed the pills. The detective then walked out into the parking lot and stood in between the Cl’s car and Joseph’s car. Joseph immediately asked the detective to change the location of the transaction to a 7-11 down the street. Detective Golino refused.
The detective asked Joseph if he had the pills. Joseph then pulled a bag of pills from underneath his leg. Joseph again asked to change locations, and the detective again refused. The detective went to his vehicle to retrieve money, and then walked back to the Cl and Joseph’s cars. Joseph stood by the rear bumper of the Cl’s car. Springer remained inside Joseph’s automobile.
Joseph said that the pills were under the floor mat of the front seat of the Cl’s vehicle. Joseph went into the rear passenger seat and the detective sat in the front passenger seat of the Cl’s car. The detective reached under the floor mat and grabbed the bag of pills. The detective then handed Joseph $3,600. Both Joseph and Springer were arrested at the scene.
After Joseph received his Miranda warnings, he claimed that he received the pills from someone named A1 Gordon and that he was going to be paid $100 for the transaction.
After bonding out of jail, Joseph came to the detective bureau and changed his story, claiming that it was Springer, and not Gordon, who was the supplier of the drugs. Joseph said that Springer had recently threatened him.

Joseph’s Case at Trial

Joseph’s version of the events at trial differed from that of the state.
On December 6, 2001, Springer came to Joseph’s home around 9:30 a.m. and asked if he wanted to go to McDonald’s for breakfast. Joseph drove Springer’s car because Springer said he did not have a driver’s license. When they arrived at the McDonald’s, Springer told Joseph to pull up next to a green car, which Joseph recognized as being the Cl’s.
Detective Golino walked up and asked if they had any pills. Springer pulled out some pills and suggested that they go to a *7 7-11, but the detective said that he wanted to do the deal right there, and then walked to his car to get some money. Joseph claimed he had no prior knowledge of these pills and got nervous when he realized what was happening.
Joseph returned to the Cl’s car and sat inside. Springer got into the car and threw the pills onto the Cl’s lap. The Cl took the pills and placed them under the floor mat by Joseph’s feet. Joseph got out of the car. Detective Golino told him to sit in the front seat of the car and count the money. Joseph looked at the detective “funny” because he had nothing to do with the transaction.
While Joseph remained outside the car, Detective Golino sat in the front seat, and asked where the pills were located. The Cl said that the pills were on the floor. When the detective went to pick up the pills, Joseph began to walk away from the car. Numerous officers then approached and arrested Joseph and Springer.
Joseph denied making any statements to Detective Golino when he was arrested. He also denied ever saying that he was going to receive $100 for the drug transaction. He insisted that he told Detective Golino that he was not involved in the transaction.
Joseph was released on bond. Two weeks after the arrest, he received threatening calls from Springer and his friends. Joseph and his mother went to talk to Detective Golino about these threats, and the detective told them they could fill out a police report. Detective Golino kept asking Joseph if he knew A1 Gordon, but he said that he did not know that person.

The Cross-Examination at Issue

The sole point on appeal concerns the following exchange between the prosecutor and Joseph on his cross-examination:
Appellant: [Detective Golino] read me my Miranda rights, but he did not ask me about, you know, anything that was involving like, you know, A1 Gordon or Mr. Springer at that time.
Prosecutor: So he read you your rights, but he didn’t ask you any questions, is that what you’re saying?
Appellant: He read me rights there át that time and he did not ask me no questions at that time when we was arrested on McDonald’s premises.
Prosecutor: Okay. So that was wrong also.
Appellant: Yes.
Prosecutor: What Detective Golino just testified?
Defense Attorney: Objection, Your Hon- or, Counsel is asking a witness to comment on some other witnesses’ testimony.
The Court: Rephrase it.
Prosecutor: So it — it’s not accurate that Detective Golino talked to you in that parking lot at—
Defense Counsel: Same objection, Your Honor.
The Court: Overruled.
Prosecutor: At McDonald’s — that’s not accurate?
Appellant: No.
Prosecutor: Is that what you said?
Appellant: No.
(Emphasis added).

Discussion

Joseph claims that the trial court reversibly erred when it allowed the prosecutor to ask him whether certain parts of Detective Golino’s testimony were “not accurate.”
It is clear that a prosecutor may not ask a witness whether another witness was lying. See Knowles v. State, 632 So.2d *8 62, 65-66 (Fla.1993); Boatwright v. State, 452 So.2d 666, 668 (Fla. 4th DCA 1984); Toomer v. State, 599 So.2d 780 (Fla. 3d DCA 1992) (following Boatwright); McKinney v. State, 579 So.2d 393 (Fla. 3d DCA 1991) (same); Mosley v. State, 569 So.2d 832 (Fla. 2d DCA 1990) (same). All of these cases involve a direct question posed to a witness as to whether another witness at trial had been lying.
For example, in Knowles, the state asked the defendant over objection, “whether he thought the state’s witness was lying and why.” 632 So.2d at 65. Citing to Boatwright, the supreme court held that such a line of questioning was improper and gave three reasons for its ruling:
First, allowing one witness to offer a personal view on the credibility of a fellow witness is an invasion of the province of the jury to determine a witness’s credibility. Second, although the fact that two witnesses disagree does not necessarily establish that one is lying, such questioning may lead the jury to conclude that the witness being questioned is actually lying. Finally, unless there is {evidence that the witness is privy to the thought processes of the other witness, the witness is not competent to testify concerning the other’s state of mind.
Knowles, 632 So.2d at 65-66.
A related line of cases holds that it is error for one witness to give an opinion about the credibility of another witness. See Acosta v. State, 798 So.2d 809, 810 (Fla. 4th DCA 2001); Page v. State, 733 So.2d 1079, 1081 (Fla. 4th DCA 1999); Johnson v. State, 682 So.2d 215, 216 (Fla. 5th DCA 1996).
Here, the prosecutor’s question about whether Golino’s testimony was “not accurate” did not run afoul of either line of cases. Joseph was not asked if the detective was “lying.” He was not asked for his opinion of the detective’s credibility. Joseph “was not required to choose between conceding the point or branding” the detective “as a liar.” United States v. Gaines, 170 F.3d 72, 82 (1st Cir.1999). Asking whether another witness is “wrong,” “not accurate,” or “mistaken” is very different from asking whether the witness is a liar. Regarding the last locution, the Second Circuit Court of Appeals has written:
Asking a witness whether a previous witness who gave conflicting testimony is “mistaken” highlights the objective conflict without requiring the witness to condemn the prior witness as a purveyor of deliberate falsehood, i.e., a “liar.”
United States v. Gaind, 31 F.3d 73, 77 (2d Cir.1994).
Finding no error, we affirm appellant’s conviction.
FARMER, C.J., and GUNTHER, J., concur.