873 So.2d 582 (2004)
Spencer Lamar LEE, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D03-1326.
District Court of Appeal of Florida, Third District.
May 26, 2004.
*583 Bennett H. Brummer, Public Defender, and Robert Godfrey, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Linda S. Katz, Assistant Attorney General, for appellee.
Before SHEVIN, RAMIREZ, and WELLS, JJ.
RAMIREZ, J.
Spencer Lamar Lee appeals his judgment of conviction and sentence for strong-arm robbery. We reverse because the prosecution improperly bolstered the credibility of a victim through the testimony of a police detective.
A jury convicted Lee of the crime of strong-arm robbery. The trial court sentenced Lee to a term of forty-years imprisonment as a prison release re-offender and an habitual violent felony offender with a thirty-year minimum mandatory sentence. He argues that he is entitled to a new trial because the trial court improperly allowed the police detective to testify about the victim's credibility and that this error is not harmless beyond a reasonable doubt. We agree with Lee that the introduction of the police detective's statements warrants a new trial.
This is a case in which the victim's credibility was at the heart of the prosecution's case. The victim was the only State witness that identified Lee as the perpetrator. The defense argued at trial that Lee was misidentified. The State presented no evidence to corroborate the identification. The victim testified that she was robbed on August 10, 2001, as she got out her car near her residence. Although she was approached from behind, she claims to have seen her assailant, whom she described as a tall and stocky black man. After he grabbed her purse, the robber got into a car and drove away, but the victim did not get a tag number. The description of the robber was so vague that the police were unable to prepare a BOLO or flyer on the suspect. On December 6, 2001, almost four months later, Detective Hill, who was assigned to the case, showed the victim a photo line-up. The victim looked at the photos for 20 minutes before selecting Lee as the robber.
Detective Hill was called to testify at trial. When the prosecution asked the detective if the victim had made "any movements or [had] she point[ed], to any one of the pictures" during the photo line-up, he responded that the victim selected a specific photo, and she "was very positive" about her selection and he thought that "she was a credible witness." The defense objected to the introduction of this testimony and moved to strike the testimony. The trial court overruled the objection. The defense also moved for a judgment of acquittal and new trial. The trial court denied the defense's motions.
We find that the police detective's response served to bolster the victim's credibility, and the admission of this testimony constituted reversible error. If the trial court had sustained the objection and immediately given a curative instruction, perhaps the damage could have been mitigated, but by overruling the objection, the jury was left with the impression that it *584 could properly take into account the detective's opinion. In Perez v. State, 595 So.2d 1096, 1097 (Fla. 3d DCA 1992), we stated that errors committed from the improper admission of a police officer's testimony that can be used to bolster the credibility of a victim's trial testimony cannot be deemed harmless. See also Rodriguez v. State, 842 So.2d 1053, 1054 (Fla. 3d DCA 2003)(where we stated that "in cases such as this where the case consists of a credibility contest between the victim and the defendant, the error is not harmless.").
The jury could have concluded that the police detective believed that the victim truthfully identified Lee as the perpetrator. In light of the fact that the prosecution's case rested entirely on the credibility of the victim, the improper admission of the police detective's testimony prejudiced Lee and thus cannot be deemed harmless. Justice Pariente, in Rimmer v. State, 825 So.2d 304 (Fla. 2002), commented on the fallibility of eyewitness identification and the danger of relying too heavily on eyewitness identification as absolute proof of a defendant's guilt. She first quoted Justice Brennan, in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), who addressed the very real danger of a mistaken identification arising from eyewitness testimony, by writing: "The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification...." Rimmer, 825 So.2d at 336. She further wrote:
Reviewing social science research pertaining to eyewitness identification, Clinical Professor of Law Connie Mayer of Albany Law School has written on the subject of the unreliability of and inherent problems with eyewitness identifications. See Connie Mayer, Due Process Challenges To Eyewitness Identification Based On Pretrial Photographic Arrays, 13 PACE L.REV. 815 (1994). As Professor Mayer explained in general, there is a high risk of misidentification:
[W]hile a great deal of credibility is given to eyewitness identification, empirical studies have shown that eyewitness identification can actually be extremely unreliable. Given the weight afforded eyewitness identification, it is not surprising that studies have shown that approximately fifty percent of those wrongly convicted were convicted based on eyewitness identification evidence. This makes mistaken identity the factor most often responsible for wrongful conviction.
What makes eyewitness identification unreliable? When crime victims attempt to recall faces of strangers they have seen for only a brief period of time, many factors affect their ability to accurately remember what they have seen. Factors that may affect reliability of the identification include: lighting conditions; the duration of the event; violence; the age, sex and race of the perpetrator; the length of time between the event and the identification and the acquisition of post-event information that may distort the memory. (citations omitted).
Id. at 337. Justice Pariente continued,
In specifically discussing photographic arrays, Professor Mayer explains:
In addition to these factors, special problems exist with respect to the identification of a person from a photographic array. After a crime has been committed, it is often standard police procedure to construct a photographic array to show a witness. One danger inherent in the reliability of an identification from such an array relates to the expectation on the part of *585 the eyewitness that the suspect is, in fact, in the photographic array. The eyewitness, believing the suspect is present in the array, will often identify the person that looks most like the criminal, rather than choosing no one.
The number of photographs in an array and the physical characteristics of the participants are also factors bearing on the reliability of the photographic identification. But in addition, the photograph is merely a two-dimensional depiction of a person. Often a witness cannot discern the height and weight accurately from a photograph. (citations omitted).
Id. at 337-38.
In Rimmer, the Florida Supreme Court all agreed that it had been error to allow a detective to testify in rebuttal about his ability to see without eyeglasses where the defense had argued misidentification under the theory that the shooter was not wearing glasses at the time of the offense and the defendant could not see without his glasses. The majority concluded that the error was harmless where two of the three surviving victims identified Rimmer as the shooter. Additionally, when he was arrested, Rimmer had a wallet and guns tying him to the murders and to the storage unit containing the stolen merchandise. By way of contrast, the State in this case presented absolutely no evidence to tie Lee to the robbery other than the victim's identification.
The police detective's inadmissible testimony cannot be justified, as the State suggests, on the basis that the prosecution did not solicit or highlight the police detective's response. See Bowles v. State, 381 So.2d 326, 328 (Fla. 5th DCA 1980) (stating that "[p]olice officers, by virtue of their positions, rightfully bring with their testimony an air of authority and legitimacy. A jury is inclined to give great weight to their opinions as officers of the law...."); Olsen v. State, 778 So.2d 422, 423 (Fla. 5th DCA 2001)(stating that a police officer's testimony that comments on a witness' credibility is especially harmful because of the great weight afforded the testimony of a police officer).
We therefore reverse and remand for a new trial.