NORTHCUTT, Judge.
Jovan Lamb appeals the denial of his motion for postconviction relief, which challenged his convictions for armed false imprisonment, burglary of a conveyance, grand theft auto, and fleeing at high speed. Lamb argues, and we agree, that he was prejudiced by his trial counsel’s' ineffective assistance in failing to file a motion for new trial. Accordingly, we reverse and remand for a new trial.
Lamb’s charges arose from an armed robbery of Dexter Rhodes and his girlfriend, Chananja Jackson. According to the trial testimony, the couple had arrived at Rhodes’ home- late one night. As they exited the car, a masked man jumped Rhodes, who tripped and fell as he tried to run away. Other perpetrators came from the side of the house, and one had a gun. They took money from. Rhodes’ pocket and secured him with duct tape. At first Rhodes believed that one of the robbers might be Lamb, whom he knew by the nickname of Chicken. But when he called out using that nickname, there was no response, so Rhodes figured that he was not Lamb. A police officer testified that Rhodes also said one of the men might have been his uncle. But at trial Rhodes denied saying that, although he admitted that Lamb, his uncle, and one of the perpetrators were generally the same physical build.
As Rhodes was being robbed, one of the men pushed Jackson onto the back seat of the car, and it sped off. One man was in the back with Jackson, and two men were in the front seat. After about five minutes, the car slowed and the back-seat passenger jumped out. At some point, the front-seat passenger threw the gun out the window. Jackson heard the driver and front-seat passenger talking, and she said they used the nicknames Chicken and Snap. Jackson testified that Chicken was *955 the driver. She testified that the men never removed their masks, but in a seeming contradiction, she also testified that she got a glimpse of their faces. Eventually, the car stopped and Jackson got out. The car drove away, and Jackson was picked up by the police.
The following day, Jackson picked Lamb’s picture from a photopack at the police station. A detective testified that Jackson immediately picked Lamb’s photo and said he was one of the persons involved in the crime. Another officer testified that Jackson said she knew who Chicken and Snap were, that at some point they had taken off their masks, and that she saw their faces. At trial, Jackson identified Lamb as the person she had chosen from the photopack. But she testified that she was not sure who the driver of the car and passenger were, and specifically she could not identify Lamb as one of them.
In argument on Lamb’s motion for judgment of acquittal, the State and defense disagreed over whether Jackson ever identified Lamb as a perpetrator in her trial testimony. The parties concurred that the entire case turned on her identification of Lamb, and the trial judge observed that it was “certainly not the strongest that I’ve ever heard ... one of the weakest in my experience of trying these kinds of cases.” The judge reserved ruling on the motion in order to review the trial transcript overnight. The judge noted:
I got the impression that Ms. Jackson and her boyfriend would have a preference to be anyplace but here. For what reason, I don’t know, but they were certainly not very helpful to the State. And there is nothing else in the testimony from the officers that lend credence to an identification of Mr. Lamb as being the perpetrator. This case turns solely on Ms. Jackson’s testimony.
The following day, after the charge conference, the judge stated: “I’m not so sure we’re going to get that far. Because I’m still thinking about her testimony, and my recollection is when you tried to get her to ID Mr. Lamb, she didn’t.” The judge later stated that he did not know if Jackson “was confused or evasive.” But the judge ultimately denied the motion for judgment of acquittal, concluding “that there was identification sufficient to go to the jury.” Lamb was convicted as charged.
In one of the claims asserted in Lamb’s postconviction motion filed under Florida Rule of Criminal Procedure 3.850, Lamb alleged that his trial counsel rendered ineffective assistance in failing to file a motion for new trial. Lamb maintained that the motion should have been based on the weight of the evidence and on Jackson’s recanted testimony. The postconviction court granted an evidentiary hearing on this claim.[1]
At the hearing, Lamb’s trial counsel testified that he filed a renewed motion for judgment of acquittal after the verdict. He believed this motion was sufficient because it would end the case, whereas a motion for new trial would merely garner a new trial. Counsel recalled that he did not think a motion for new trial would cause the judge to change his mind about rulings made during the trial. He also asserted that he refrained from filing a motion for new trial as a matter of trial strategy, but he admitted that there was no harm in filing the motion. Finally, trial counsel testified that Jackson did not approach him after trial to recant her testi *956 mony.[2]
Denying relief on this claim, the postconviction order stated that “[i]t was proper for trial counsel to raise a claim of insufficiency of the evidence in a renewed Motion for JOA.” That statement, while accurate, failed to address Lamb’s claim that counsel should have filed a motion for new trial based on the weight of the evidence. And trial counsel’s testimony at the evidentiary hearing reflected his misunderstanding of the two motions.
On the one hand, a motion for judgment of acquittal tests the sufficiency of the evidence; a trial court must determine “whether the evidence presented is legally adequate to permit a verdict.” Geibel v. State, 817 So.2d 1042, 1044 (Fla. 2d DCA 2002). On the other hand, a motion for new trial tests the weight of the evidence; a trial court must weigh the evidence and determine credibility just as a juror is required to do. Id.
Fergien v. State, 79 So.3d 907, 908 (Fla. 2d DCA 2012).
Trial counsel asserted that he forewent moving for a new trial because he did not think the judge would change his mind about rulings made during the trial. But his renewed motion for judgment of acquittal asked the judge to do precisely that in regard to the judge’s previous ruling that the State’s evidence was sufficient. A motion for new trial would have presented an entirely different question for the judge — based on the weight of the evidence, not its sufficiency.
The failure to file a motion for new trial can support a claim for postconviction relief. In Robinson v. State, 462 So.2d 471 (Fla. 1st DCA 1984), the First District reversed convictions for sexual battery and kidnapping and remanded for a new trial after defense counsel filed an untimely but successful motion for new trial. The order granting new trial was reversed on appeal because the motion had been untimely, and Robinson was then adjudicated guilty. Id. at 475 (citing State v. Robinson, 417 So.2d 760 (Fla. 1st DCA 1982)). In the subsequent appeal, Robinson argued that a new trial was warranted in the interest of justice. Id. at 476. Although the victim had positively identified Robinson as the rapist, there was expert testimony casting doubt on his participation. Id. at 474-75. Robinson maintained that he only gave the victim a ride in his car, and he denied any sexual contact. Id. at 474.
Although the appellate court recounted the evidence from Robinson’s trial, it explained the trial judge’s exclusive authority to review the weight of the evidence: “the only avenue for judicial review of the weight of the evidence is by motion for new trial at the trial court level.” Id. at 476-77. The First District then recognized an obligation on defense counsel to file a motion for new trial “in criminal cases where the evidence of guilt is tenuous.” Id. at 477.
Since the only judicial review of the weight of the evidence available to an accused is a motion for new trial, a fortiori the failure to timely file such a motion which results in the loss of all judicial review of evidentiary weight should likewise constitute ineffective assistance of counsel, in violation of the defendant’s constitutional rights.
Id. But rather than holding that it was ineffective assistance, the First District determined to grant a new trial “in the inter *957 est of justice.” Id. (citing Fla. R. App. P. 9.140(f), now found at 9.140(i): “In the interest of justice, the court may grant any relief to which any party is entitled.”).
The First District later clarified that Robinson did not establish “a per se rule of entitlement to relief for ineffective assistance of counsel without regard to the underlying facts involved in the case.” Williams v. State, 553 So.2d 309, 309 (Fla. 1st DCA 1989). Notwithstanding, Robinson provides a persuasive analysis of the circumstances in which the failure to file a motion for new trial may constitute ineffective assistance of counsel. In contrast, in Manley v. State, 605 So.2d 1327, 1328 (Fla. 2d DCA 1992), this court affirmed the denial an ineffective assistance claim based on counsel’s failure to file a motion for new trial, holding that it was “not convinced of any strong likelihood a new trial would have been ordered.”
We conclude that defense counsel’s failure to file a motion for new trial in this case constituted deficient performance. See Robinson, 462 So.2d at 477. The standard for proving ineffective assistance of counsel is two-pronged: a defendant must show that counsel’s performance was deficient and that the deficient performance caused prejudice to the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). While strategic decisions of counsel are subject to great deference in postconviction review, “‘patently unreasonable’ decisions, although characterized as tactical, are not immune.” Cabrera v. State, 766 So.2d 1131, 1133-34 (Fla. 2d DCA 2000) (quoting in part Roesch v. State, 627 So.2d 57, 58 n. 3 (Fla. 2d DCA 1993)). Trial counsel’s explanation for failing to file the motion reveals a fundamental misunderstanding of the difference between a motion for judgment of acquittal and a motion for new trial. We conclude that counsel’s decision to forego a motion for new trial was not reasonable trial strategy.
We also conclude that the prejudice prong of the Strickland test is satisfied here; there is a reasonable probability that, but for counsel’s failure to file a motion for new trial, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052. “The concern of the court evaluating an ineffectiveness claim should be whether the result of a particular proceeding is unreliable because of a breakdown in the adversarial process.” Cabrera, 766 So.2d at 1134 (quoting Downs v. State, 453 So.2d 1102, 1108-09 (Fla.1984)) (internal quotation marks omitted).
In this case, the identification testimony underpinning Lamb’s prosecution was highly equivocal. Although the trial judge ultimately concluded that the testimony was legally sufficient, he struggled with that question, and he characterized the testimony as the weakest identification evidence he had ever seen. We conclude that there is a reasonable probability that the judge would have granted a new trial if defense counsel had filed the proper motion based on the weight of the evidence. Accordingly, we reverse and remand for a new trial.
Reversed and remanded.
SILBÉRMAN and SLEET, JJ„ Concur.

. We note that the postconviction judge did not preside over the trial.

. The order held that “there was no reason to file a Motion for New Trial based on recantation” inasmuch as defense counsel testified that Jackson did not contact him after the trial. That conclusion was supported by the testimony, and we discuss this issue no further.