NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


FRANCISCO SIERRA SIERRA, )
)
Appellant, )
)
v. ) Case No. 2D15-2769
)
STATE OF FLORIDA, )
)
Appellee. )
_____ )

Opinion filed August 4, 2017.

Appeal from the Circuit Court for Collier
County; Lauren L. Brodie, Judge.

Francisco S. Sierra, pro se.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Elba Caridad Martin,
Assistant Attorney General, Tampa, for
Appellee.



BLACK, Judge.

Francisco Sierra appeals from the denial of his motion for postconviction

relief after an evidentiary hearing. We reverse the postconviction order and remand to

the circuit court for a new trial.

Following a jury trial, Sierra was convicted of two counts of lewd or lascivious molestation, in violation of section 800.04(5)(b), Florida Statutes (2009), and one count of lewd or lascivious exhibition, in violation of section 800.04(7)(a). In his motion for postconviction relief, filed pursuant to Florida Rule of Criminal Procedure 3.850, Sierra alleged that trial counsel was ineffective for failing to move for a mistrial or accept the trial court's offer of a mistrial based on witnesses for the State vouching for the credibility of the victims.[1]

An evidentiary hearing was held to resolve Sierra's claim. At that hearing, Sierra's postconviction counsel asked the court to take judicial notice of the relevant portions of the trial transcript; counsel also read portions of the transcript into the postconviction record. The transcript reflects that the State's case rested on the credibility of the victims, particularly the victim who raised the allegations against Sierra and who had previously recanted her claims (the first-named victim). There was no dispute that both a school guidance counselor and the lead detective and investigator for the special victims unit testified on cross-examination by trial counsel as to the credibility of the first-named victim and the veracity of the allegations against Sierra. There was also no dispute that the trial court recognized the problem with the testimony. The trial court stated:

> There's a[] problem we have, folks, and that is this. We've
> had testimony in this trial from the State's witnesses . . . on
> cross-examination of these witnesses, in effect, these
> witnesses were rendering their opinion as to the credibility of

---

[1]Sierra raised a second claim of ineffective assistance of trial counsel which was summarily denied. He does not challenge the denial of that claim, and our reversal for new trial moots the issue.

the alleged victim. And there was no objection made. And, in effect, when the—we can't have a witness testify as to whether or not someone is deceptive or lying or truthful or otherwise. Because if we do that, we don't need a jury. That's what the jury is supposed to figure out. But those questions were elicited on cross-examination. So the court's concern is that we're going to have a 3.850 on this case. Do you know what I'm talking about [defense counsel]?

. . . .

So I don't know how—I mean, I don't want to—no one wants to try a case twice, but I see that happening in this case. Now, one possible solution is that both sides could agree to have a mistrial and we could try this case another day.

There was no agreement, and trial counsel did not move for a mistrial. Sierra was convicted of the charged offenses.

At the postconviction hearing, Sierra recalled that trial counsel's strategy had been to attack the investigation as minimal and one-sided and that he had agreed to that strategy. Sierra also testified that he was not present for the bench conversation where the trial court suggested a mistrial and that when counsel asked if he wanted a new trial, counsel did not explain what that would mean.

During his testimony, trial counsel confirmed that his strategy had been to attack the investigation as insufficient. He testified that he had intended to establish that the guidance counselor was not trained in detecting deception and that she did not question the truth of the story the first-named victim provided. When asked about the opinion testimony, he testified that he believed that objecting and approaching the bench would have drawn the jury's attention to the problematic testimony and would have given the jury the idea that he was losing control of the witness. As to the lead detective's testimony, trial counsel stated that his strategy had been to establish that the

investigation had initially stalled because the lead detective questioned the veracity of the allegations and that the investigation had otherwise been inadequate. He reiterated that he had not wanted to draw attention to the opinion testimony by objecting.

As to the trial court's mistrial suggestion, counsel testified that he had evaluated the trial and how it was progressing. He testified that he had believed it was not in Sierra's interest to agree to a mistrial because to do so would have eliminated what counsel felt was a strong issue for appeal—that the State had been permitted to amend the information after the jury had been impaneled and sworn.[2] Counsel further testified that he believed that by agreeing to a mistrial based "on that one little problem"—that "the witness said an opinion"—he would have nullified what he perceived as a bigger issue. When asked if he had discussed this with Sierra and whether Sierra had agreed with the strategy to decline a mistrial, counsel stated, "I didn't specifically ask him because I didn't think that he—I basically told him what was happening and he just nodded yes, that he understood me."

In denying Sierra's motion, the postconviction court found that not objecting to the witnesses' testimonies and declining a mistrial were strategic decisions in light of the amended information issue. The court further found that Sierra failed to demonstrate an entitlement to relief.

"An attorney's performance must be reasonable under the prevailing professional norms, considering all of the circumstances, and viewed from the attorney's

---

[2]Whether the trial court erred in permitting the State to amend the information was raised on direct appeal. This court affirmed Sierra's convictions and sentences. Sierra v. State, 103 So. 3d 161 (Fla. 2d DCA 2012) (table decision).

- 4 -

perspective at the time of trial."  Cabrera v. State, 766 So. 2d 1131, 1133 (Fla. 2d DCA 2000).  The question presented by Sierra's claim is whether a reasonably effective lawyer would have declined to move for a mistrial.  In addressing this question we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland v. Washington, 466 U.S. 668, 689 (1984).  However, that presumption is rebuttable; the judgment or strategy of counsel must be objectively sound.  Id.  " '[P]atently unreasonable' decisions, although characterized as tactical, are not immune" from challenge.  Lamb v. State, 124 So. 3d 953, 957 (Fla. 2d DCA 2013) (quoting Cabrera, 766 So. 2d at 1133).

Counsel's failure to move for a mistrial, or to accept the court's apparent offer of a mistrial, constitutes deficient performance.  It was unreasonable for counsel to decline a new trial in favor of pursuing an issue for appeal which—if successful—would have garnered the same result.  Cf. Davis v. State, 740 So. 2d 86, 86 (Fla. 1st DCA 1999) (concluding that the untimely filed amended information was prejudicial and reversing and remanding for a new trial).  The propriety of the court's ruling allowing the State to amend the information was not, as counsel believed, a "bigger issue."  "Trial counsel's decision in this case to permit this evidence repeatedly during [his] own cross-examination of not one, but two State witnesses, and to take no action to try to alleviate the damage, was 'outside the wide range of professionally competent assistance.' " See Glancy v. State, 941 So. 2d 1201, 1203 (Fla. 2d DCA 2006) (quoting Strickland, 466 U.S. at 690).

> It is elemental in our system of jurisprudence that the jury is the sole arbiter of the credibility of witnesses.  Barnes v. State, 93 So. 2d 863 (Fla. 1957).  Thus, it is an invasion of

the jury's exclusive province for one witness to offer his
personal view on the credibility of a fellow witness.

Page v. State, 733 So. 2d 1079, 1081 (Fla. 4th DCA 1999) (quoting Boatwright v. State, 452 So. 2d 666, 668 (Fla. 4th DCA 1984)). "It is error to admit the testimony of a witness that is offered to vouch for the credibility of another witness." Rhue v. State, 693 So. 2d 567, 568 (Fla. 2d DCA 1996). Where a police officer's testimony is used to bolster the credibility of a victim, the error cannot be deemed harmless. Cavaliere v. State, 147 So. 3d 628, 629 (Fla. 2d DCA 2014) (quoting Lee v. State, 873 So. 2d 582, 584 (Fla. 3d DCA 2004)); see also Page, 733 So. 2d at 1081 ("It is especially harmful for a police witness to give his opinion of a witnesses' [sic] credibility because of the great weight afforded an officer's testimony."). And "[a]lthough the prohibitions on civilians vouching for a victim's credibility have not been treated as harshly by the courts, such testimony can still be harmful error[.]" Cavaliere, 147 So. 3d at 629.

"The benchmark for judging claims of ineffectiveness . . . is whether the conduct of counsel 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " Cabrera, 766 So. 2d at 1133 (quoting Downs v. State, 453 So. 2d 1102, 1106 (Fla. 1984) (quoting Strickland, 466 U.S. at 686)). The credibility of the victims was the pivotal issue in this case. See Rhue, 693 So. 2d at 570. A guidance counselor and the lead detective vouched for the first-named victim's credibility. By failing to object to the bolstering testimony or move for a mistrial, "the jury was left with the impression that it could properly take into account the detective's opinion," as well as the guidance counselor's. See Cavaliere, 147 So. 3d at 629 (quoting Lee, 873 So. 2d at 583-84). "The concern of

the court evaluating an ineffectiveness claim should be whether the result of a particular proceeding is unreliable because of a breakdown in the adversarial process." Lamb, 124 So. 3d at 957 (quoting Cabrera, 766 So. 2d at 1134). And in this case the opinion testimony was clearly damaging, "so undermin[ing] the proper functioning of the adversarial process that the trial cannot be relied on has having produced a just result." See Glancy, 941 So. 2d at 1203; see also Cavaliere, 147 So. 3d at 630.

> In the same way that an appeal not taken because of late filing prejudices a defendant [for purposes of the Strickland analysis] by denying him "the opportunity for a second trial he otherwise would have had," so too does counsel's failure to request a mistrial deprive [the defendant] of a "procedural right to which the law entitle[d]" him.

Middleton v. State, 41 So. 3d 357, 362 (Fla. 1st DCA 2010) (third alteration in original) (quoting United States v. Ramsey, 323 F. Supp. 2d 27, 40 (D.D.C. 2004)); cf. Lamb, 124 So. 3d at 956 ("The failure to file a motion for new trial can support a claim for postconviction relief."); Manley v. State, 605 So. 2d 1327, 1328 (Fla. 2d DCA 1992) (affirming denial of postconviction relief where prejudice was not established because the court was "not convinced of any strong likelihood a new trial would have been ordered"). Where there is a reasonable probability that a mistrial would have been granted had counsel made the appropriate motion, prejudice has been established. Cf. Lamb, 124 So. 3d at 957 ("We conclude that there is a reasonable probability that the judge would have granted a new trial if defense counsel had filed the proper motion based on the weight of the evidence."). Moreover, "[g]iven the significance of the issue, we must conclude [that] there is a reasonable probability that, but for trial counsel's omissions, the outcome of the proceeding would have been different." Rhue, 693 So.

2d at 570.

Counsel's decision to forego a new trial in favor of the mere possibility of a new trial following a successful appeal was not reasonable trial strategy. Sierra was deprived of a fair trial; counsel's rejection of the remedy offered by the court prejudiced Sierra. See Garrido v. State, 162 So. 3d 1069, 1072 (Fla. 4th DCA 2015). Accordingly, we reverse the denial of Sierra's motion for postconviction relief and remand for a new trial.

Reversed and remanded.

VILLANTI and SALARIO, JJ., Concur.