# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-4126
Lower Tribunal No. 21-CF-001650

_____

RICHARD ALLEN COCHRAN,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

Appeal from the Circuit Court for Lee County.
J. Frank Porter, Judge.

June 6, 2025

NARDELLA, J.

This is an appeal of a final judgment and sentence following a jury trial in which the appellant, Richard Cochran, was convicted of burglary, manslaughter, and conspiracy. His sole argument on appeal is that the trial court erred when it allowed a detective to testify to the credibility of the State's key witness. We agree that this was error and because we cannot say the error was harmless beyond a reasonable doubt, we reverse and remand for a new trial.

## Background

In the early morning, hours two armed intruders concealed by ski masks broke into a home shared by a mother and her adult children. During the robbery, one

intruder was killed, but the other escaped. To apprehend the intruder who escaped, the police first identified the intruder who was killed then questioned his girlfriend, who revealed a connection to Cochran.

Building on that lead, the police pulled Cochran over the same day and searched the vehicle he was driving,[1] finding a ski mask and a gun, both tools the intruders used. They also found his cell phone on the front seat, and a search of that phone yielded text messages discussing the home to be burglarized six weeks prior to the break-in. Those messages were sent between Cochran and Jessica Grier.

With this evidence in hand, the police questioned Grier, and she solidified their suspicion that Cochran was the second intruder who escaped. In separate police interviews, Grier admitted that she was a neighbor of the victims and identified their home as a "cash lick." In exchange for her testimony against Cochran, the State then offered Grier a deal which she accepted.

At trial, the State attempted to take the sting out of Grier's plea by acknowledging to the jury in opening statements that she "turn[ed] State's evidence" and later asking Detective Michael Spencer to explain to the jury why Grier had been given a plea deal. He answered that question as follows:

> I know that Ms. Grier's attorney and the State ended up talking. It was learned that Ms. Grier was interested in cooperating with the State.

---

[1] The vehicle driven by Cochran was not owned by him, but rather belonged to the girlfriend of the dead intruder.

From there, we had a meeting, and during that meeting she was read the terms of the agreement, basically, what her cooperation would consist of.

From there, that first interview, I questioned her. It was not under oath. It wasn't sworn testimony. And it was basically information-gathering to be able to say whether or not she was a credible witness.

The things that she had told me from that interview, and based on my investigation at that time, everything was credible that she had told me.

From there, I let the State know that I believe that she was a credible witness. We then had - -

At that point, Cochran objected on the basis of "improper bolstering," but the trial judge overruled the objection, no curative instruction was given, and the detective continued, vaguely stating that from his investigation he knew Grier "was telling truthful information." On appeal Cochran argues that this was error, and we agree.

## Standard of Review

"A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard." *Morris v. State*, 233 So. 3d 438, 446 (Fla. 2018). But we must always remember that the trial court's discretion is limited by the rules of evidence. *Hudson v. State*, 992 So. 2d 96, 107 (Fla. 2008).

## Analysis

Almost seventy years ago, the Florida Supreme Court declared that there is no legal principle more firmly established in our system of jurisprudence than that which makes the jury the sole arbiter of the credibility of witnesses. *Barnes v. State*, 93 So. 2d 863, 864 (Fla. 1957). "Thus, it is an invasion of the jury's exclusive

3

province for one witness to offer his personal view on the credibility of a fellow witness." *Boatwright v. State*, 452 So. 2d 666, 668 (Fla. 5th DCA 1984) (citing *Bowles v. State*, 381 So.2d 326, 328 (Fla. 5th DCA 1980)). Yet, that is exactly what happened here.

The State believes that an exception to this long-standing principle should be made because the detective did not testify that the witness was truthful or credible *at trial*. Rather, as the State's argument goes, the detective was only providing his personal opinion on the credibility of her out-of-court statements. In Florida, though, two of our sister courts have already considered similar testimony and found that this is a distinction without a difference. *Smith v. State*, 292 So. 3d 46, 48 (Fla. 5th DCA 2020); *Lee v. State*, 873 So. 2d 582, 583 (Fla. 3d DCA 2004).

In *Smith*, the Fifth District considered whether a recording which relayed an officer's pretrial perceptions of a witness's credibility was admissible. 292 So. 3d at 48. Similarly, in *Lee*, the Third District considered whether it was appropriate for an officer to testify about the credibility of a witness's pretrial photographic lineup identification. 873 So. 2d at 583. Neither court hesitated to conclude that each officer's credibility testimony was improper even though the testimony was directed at the witness's pretrial credibility. *Smith*, 292 So. 3d at 48; *Lee*, 873 So. 2d at 583. We agree with our sister courts' conclusions in *Lee* and *Smith*, and like both cases, we find that when an officer directly comments on the credibility of a witness, the

trial court abuses its discretion by overruling an objection to improper bolstering. We also reject the State's invitation to find this error harmless.

The harmless error test places the burden on the State to prove beyond a reasonable doubt that the error did not contribute to the verdict. *Maysa v. State*, 363 So. 3d 1191, 1195 (Fla. 6th DCA 2023) (citing *Cardona v. State*, 185 So. 3d 514, 520 (Fla. 2016)). This test "is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test." *State v. Diguilio*, 491 So. 2d 1129, 1139 (Fla. 1986). "The focus is on the effect of the error on the trier-of-fact" and questions "whether there is a reasonable possibility that the error affected the verdict." *Id.* Here*,* Grier's testimony was central to tying Cochran to the alleged offenses and identifying him as the second intruder since the victims did not know Cochran and could not identify him.

At trial, Cochran denied that he participated in any criminal activity. Instead, he argued that Grier did more than just identify the target, she carried out the crime; she, not Cochran, was the second masked intruder that escaped before the police arrived. According to Cochran, Grier wanted revenge against one of the adult children living in the home. In all, Cochran's case rested upon Grier's lack of credibility because she had motive to commit the crime, knowledge to carry it out, and an incentive to blame another. Against this backdrop, Detective Spencer's vouching for the credibility of Grier is harmful.

5

In sum, while the State, in appropriate cases, has the right to explain its procedures and the relationship between the State and its witnesses, in doing so the State may not directly comment upon the credibility of another witness. *Smith*, 292 So. 3d at 48.

REVERSED and REMANDED.

TRAVER, C.J., concurs.
WHITE, J., concurs in part, dissents in part, with opinion.

_____

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED
_____

WHITE, J., concurring in part, dissenting in part.

I concur with the majority's conclusion that the trial court erred when it overruled Cochran's "improper bolstering" objection after Detective Spencer testified that Grier was a "credible witness." Because I conclude that the trial court's error was harmless beyond a reasonable doubt, I dissent from the majority's decision to reverse and remand for a new trial.

The State does have the burden "to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *Figueroa-Sanabria v. State*, 366 So. 3d 1035, 1050 (Fla. 2023) (quoting *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986)). Nevertheless, to fulfill our obligation

6

to determine whether harmless error occurred, we may not confine our analysis to the matters raised by the State. *See Jackson v. State*, 107 So. 3d 328, 342 (Fla. 2012). Instead, we must scrutinize the entire record, which includes "a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict." *Id.* (quoting *DiGuilio*, 491 So. 2d at 1135); *see also Figueroa-Sanabria*, 366 So. 3d at 1050 (same).

The trial in this case spanned four days. 21 witnesses testified, including forensic experts, and 101 exhibits were admitted, including a DVD of Cochran's interviews by law enforcement. Grier testified two days after Detective Spencer. During closing argument, the State did not mention Detective Spencer's improper testimony. After thoroughly examining the record in its entirety as required by Florida law, I conclude that the trial court's error was harmless beyond a reasonable doubt. *See Figueroa-Sanabria*, 366 So. 3d at 1051 (the jury may reject the defendant's explanation of events and view the defendant's statements as proof of guilt); *Overton v. State*, 801 So. 2d 877, 899 (Fla. 2001) (even if the chaplain's testimony was improper bolstering, "the jury had the benefit of seeing [the witness] testify and, therefore, with or without the chaplain's testimony, they were able to assess his credibility."); *Jackson*, 107 So. 3d at 346 (Canady, J., dissenting) ("The prosecutors did not, however, at any point [in closing argument] refer to the [unfairly prejudicial] opinions expressed by the detectives.").

The majority has thoroughly examined the same record and reached a different conclusion. I respectfully disagree and would affirm the judgment and sentence.

_____

Blair Allen, Public Defender, and Steven L. Bolotin, Assistant Public Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Alicia M. Winterkorn, Assistant Attorney General, Tampa, for Appellee.