DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT
————————————————

STATE OF FLORIDA,

Appellant,

v.

RONALD E. WALKER,

Appellee.

No. 2D2024-1884
————————————————

November 7, 2025

Appeal from the Circuit Court for Pinellas County; Philippe Matthey, Judge.

James Uthmeier, Attorney General, Tallahassee, and Marena S. Ramirez, Assistant Attorney General, Tampa, for Appellant.

Rachael E. Reese of Rachael Reese, P.A., Tampa, for Appellee.

LABRIT, Judge.

After being found guilty of sexual battery of a child and other charges, Ronald Walker filed a motion for postconviction relief alleging ineffective assistance of trial counsel. The postconviction court granted his motion, concluding that counsel's performance was deficient and that it prejudiced Mr. Walker's defense. Because the postconviction court in part relied on the wrong legal standard in evaluating prejudice, and because it also incorrectly concluded that counsel's alleged deficient performance prejudiced Mr. Walker, we reverse.

## I.

In 2016, the State charged Mr. Walker with sexual battery of a child twelve years of age or older but younger than eighteen years of age. *See* § 794.011(8)(b), Fla. Stat. (2016). The first count of the information alleged that on or between September 1 and October 8, 2016, Mr. Walker placed his penis "into or in union with the sexual organ of [the victim] and/or . . . into or in union with the anus of [the victim]." The information contained other counts not at issue on appeal.

At trial, the State presented testimony from eleven witnesses, including the victim who was fourteen years old at the time of the events. The victim told the jury that when she was at Mr. Walker's home in September 2016, he anally penetrated her with his penis. She explained that she told Mr. Walker to stop but he didn't and that he said in response, "You got this. You're my soldier." The victim also testified to an incident that occurred at Mr. Walker's home in October 2016, when he took her into his bedroom, sat her on the bed, pulled down her clothes, and "stuck his penis in [her] vagina."

In addition to presenting the victim's testimony, the State called two other child witnesses to testify at Mr. Walker's trial. One of these witnesses testified that in October 2016, when she was fourteen years old, Mr. Walker touched her inappropriately and "tried to make [her] touch his penis." The other witness testified that when she was at Mr. Walker's home in the fall of 2016, he took her into his bedroom, sat her on the bed, pulled down her clothes, and "stuck his penis inside [her] vagina." That witness, who was sixteen years old at the time this occurred, said that she told Mr. Walker to stop but that he "just said that [she's] his little soldier and this is how [she] become[s] a woman."

2

The State further introduced Mr. Walker's recorded jail calls into evidence. On one call published to the jury, Mr. Walker told his wife:

> I slipped. Okay, baby? I slipped. I messed up. I slipped and I messed up. . . . I'm so f***ing stupid. Oh my God, I'm so stupid. I ain't gonna make it out of this one. . . . I'm sorry I let you down. Oh, my God, I'm sorry I hurt you like this.

On another published call, Mr. Walker said to his wife:

> I was lured -- I was lured in, baby, and my dumb ass, my stupid ass -- oh, my gosh, my stupid ass. . . . I f***ed up. I don't know what I was thinking. I'm just so sorry. . . . I admitted to my mistakes and I told the truth.

On a third call with his wife, Mr. Walker stated:

> I'm admitting to my s**t, but it wasn't just me. They signed me up for this. They led me on. That's my stupid ass. . . . I'm just saying that I messed up, baby. I'm admitting that I f***ed up. I know I'm a grown man. I f***ed up.

And on a fourth call, after Mr. Walker's wife told him, "You can't take this to trial when they got all this . . . evidence against you and you confessing to some stuff," Mr. Walker said: "I just got tired of lying, baby. I'm tired. . . . I'm so sorry. Oh, my God, oh, my God, I can't even forgive myself. . . . I messed up so bad."

The State then introduced a jail call between Mr. Walker and his mother, during which Mr. Walker stated:

> I did some bad things in my life, and I just want to say I'm sorry for doing them. . . . I was on drugs. . . . Just know that you didn't raise me like this. Just know that it was drugs. I couldn't -- I was trapped in evil (unintelligible) and you was right. I should have stayed off them. You was right.

Lastly, the State published Mr. Walker's jail call with the sixteen-year-old victim who testified at trial. Mr. Walker told her: "I just want to apologize if I ever hurt you or anything . . . . I'm so sorry. . . . Just know that you didn't do nothing wrong. . . . [I] messed up real bad."

3

The State rested its case shortly after introducing this jail call. Mr. Walker then called one witness to testify in his defense. The witness, a family member of Mr. Walker's, explained that a few weeks before the October 2016 incidents at Mr. Walker's home, he saw a change in the victims' demeanor. This testimony appeared to be geared toward the defense theory of the case—that the victims fabricated their accounts as part of a "witch hunt." The defense first presented this theory during opening statements, reviewing the history of the Salem witch trials for the jury and suggesting that a similar witch hunt occurred here. Consistent with this theory, the defense witness testified that the victims typically acted "cold and closed off" but "then all of a sudden" they "start[ed] to be happy for some reason." The witness also explained that he and more than a dozen people were at Mr. Walker's home over the weekend in October 2016 when two of the alleged incidents occurred, and he testified that he did not witness anything inappropriate.

The defense rested after this witness's testimony, and the State later presented its closing argument. Significant to this appeal, the prosecutor told the jury the following during closing arguments when discussing the first count against Mr. Walker:

> Notice that there is an and/or here, anus or vagina, members of the jury. [The victim] told you about both of them, and it's our position we have proven both beyond and to the exclusion of every reasonable doubt, but you don't have to find both. If half of you think that the State has proven the vaginal penetration and the other half thinks anal penetration beyond reasonable doubt, that's fine.

Mr. Walker's counsel did not object. During his closing argument, Mr. Walker's counsel returned to the defense theory, arguing that the victims were "putting on a show for some kind of a witch hunt" and that their testimony consisted only of "stories, stories to start a witch hunt."

4

At the conclusion of trial, the jury was given a general verdict form. The jury found Mr. Walker guilty as charged, and the trial court sentenced him to twenty-five years in prison on the first count of the information. Mr. Walker appealed, and this court affirmed. *See Walker v. State*, 296 So. 3d 409 (Fla. 2d DCA 2020).

## II.

Mr. Walker subsequently filed a motion for postconviction relief alleging ineffective assistance of counsel. His motion raised multiple grounds but only three are pertinent to this appeal. Under Ground Five, Mr. Walker argued that his counsel was ineffective in failing to object to the State's comment during closing—that "[i]f half of you think that the State has proven the vaginal penetration and the other half thinks anal penetration beyond reasonable doubt, that's fine"—because it created a risk of a nonunanimous verdict. Through Ground Eight, Mr. Walker argued that trial counsel was ineffective in failing to object to the general verdict form in light of the State's closing and its presentation of two different incidents charged under one count. And based on these arguments, Mr. Walker argued cumulative error under Ground Nine.

To prevail on his ineffective assistance of counsel claims, Mr. Walker had to show, pursuant to *Strickland v. Washington*, 466 U.S. 668, 687 (1984), that counsel's performance was deficient and that the deficient performance prejudiced his defense. After an evidentiary hearing,[1] the postconviction court determined that Mr. Walker

_____

[1] Two witnesses testified at the hearing: Mr. Walker and attorney Stephanie Pillar, who served as co-counsel for the defense during trial. Mr. Walker's postconviction counsel told the postconviction court that the "only purpose" of Mr. Walker's testimony was to show that his lead trial counsel "was so unprepared . . . that he wouldn't have been aware of what to object to." Attorney Pillar testified for the State that she thought lead trial counsel "did a good job" and that she didn't recall having to

5

established both as to Grounds Five and Eight, and it found cumulative error under Ground Nine. The postconviction court thus granted Mr. Walker's motion and vacated his judgment and sentence.

In its order, the postconviction court reviewed the *Strickland* standard, and in concluding that Mr. Walker established prejudice under *Strickland* as to Ground Five, the court first reasoned that

> but for counsel's failure to object, there is a reasonable probability that the outcome of the trial would have been different. "As a state constitutional matter, a criminal conviction requires a unanimous verdict in Florida." *Shahgodary v. State*, 336 So. 3d 8, 11 (Fla. 4th DCA 2022). "Fundamental error occurs where the jury is allowed to deliberate on two separate instances of a crime where the defendant was only charged with one count of the crime." *Parsons v. State*, 376 So. 3d 747, 749 (Fla. 4th DCA 2024). "Thus, where the State argues to a jury that a defendant may be convicted on a count based on multiple possible acts of the alleged crime, the possibility of a non-unanimous verdict arises and fundamental error occurs." *See Parsons*, 376 So. 3d at 747 . . .
>
> Considering that the State's argument in this case constitutes fundamental error, it necessarily establishes that Defendant was prejudiced. *See Steiger v. State*, 328 So. 3d 926, 930–31 (Fla. 2021) . . . .

(Citation modified.)

The postconviction court also considered the "fairly compelling evidence" against Mr. Walker in analyzing Ground Five. It reasoned that the jail calls "do not refer to any specific conduct or victim(s)" and found it "impossible to determine" whether the jury reached a unanimous verdict because "some jurors may have believed that the September 2016 instance of anal penetration occurred, while others could have believed

---

bring anything objectionable to his attention during closing arguments. Attorney Pillar also testified that "there was a lot of evidence" against Mr. Walker and that it "was not an easy case."

6

that . . . the October 2016 instance[] of vaginal penetration occurred." The postconviction court applied the same reasoning to Ground Eight involving the verdict form, concluding that Mr. Walker "was prejudiced by this deficiency for the same reasons described in Ground Five."[2]

This appeal followed. The State maintains that the postconviction court applied the wrong law and that Mr. Walker failed to meet his burden to show deficient performance and prejudice under *Strickland.* We agree in part and conclude that Mr. Walker failed to establish prejudice under *Strickland.* We do not address or decide whether counsel's performance was deficient, as there is no need for us to do so. *See State v. Jenkins*, 391 So. 3d 510, 514 (Fla. 2d DCA 2024) (quoting *Jefferson v. State*, 351 So. 3d 266, 269 (Fla. 2d DCA 2022)).

### III.

In reviewing the postconviction court's order, we defer to the postconviction court's factual findings but review its legal conclusions de novo. *See id.* at 513. At issue here are the postconviction court's ultimate conclusions that Mr. Walker satisfied the deficiency and prejudice prongs of *Strickland,* which we must review de novo. *See Bruno v. State*, 807 So. 2d 55, 62 (Fla. 2001).

The prejudice prong focuses on "whether the conduct of counsel 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *Campbell v.*

---

[2] That is, the postconviction court first reasoned as to Ground Eight that "[t]he State's closing called into question the unanimity of the jury's verdict as to count one, resulting in fundamental error." It then explained that "[w]ith the exception of one victim's testimony, the other evidence (such as the jail calls) in this case, while compelling, did not reference a specific victim or conduct." The court further deemed it "impossible to determine" whether the jury reached a unanimous verdict "[w]ithout a special verdict form."

7

*State*, 247 So. 3d 102, 108 (Fla. 2d DCA 2018) (quoting *Sierra v. State*, 230 So. 3d 48, 52 (Fla. 2d DCA 2017)). To establish prejudice in this context, "[a] defendant must do more than speculate that an error affected the outcome." *Hilton v. State*, 326 So. 3d 640, 648 (Fla. 2021) (quoting *Bradley v. State*, 33 So. 3d 664, 672 (Fla. 2010)). Instead, the defendant must demonstrate that "there is a reasonable probability that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Bradley*, 33 So. 3d at 672).

The postconviction court recited this standard in its order. In analyzing whether Mr. Walker satisfied it, however, the court initially veered away from this standard and toward the fundamental error doctrine. That doctrine is a function of appellate review that allows appellate courts to consider an unpreserved error on direct appeal where the error is so fundamental that it is tantamount to a denial of due process.[3] *See F.B. v. State*, 852 So. 2d 226, 229 (Fla. 2003). We do not decide whether the State's closing comment in this case rises to the level of fundamental error. But more to the point, we need not decide this issue because fundamental error is not the test for prejudice under *Strickland*. *See Moradi v. State*, 410 So. 3d 606, 614–15 (Fla. 6th DCA 2025); *see also Tate v. State*, 295 So. 3d 341, 345–46 (Fla. 2d DCA 2020) (explaining that the test for fundamental error on direct appeal and the test for prejudice under *Strickland* are "two very different legal standards"); *Romero v. State*, 276 So. 3d 514, 520 (Fla. 5th DCA 2019)

---

[3] As our supreme court has explained, fundamental error is an "exacting standard," *Reed v. State*, 837 So. 2d 366, 370 (Fla. 2002), and it applies "only in rare cases where the interests of justice present a compelling demand for its application," *Sheppard v. State*, 151 So. 3d 1154, 1166 (Fla. 2014) (citing *Ray v. State*, 403 So. 2d 956, 960 (Fla. 1981)).

("[I]neffective assistance of trial counsel claims deal with the possibility of prejudice at trial, not on appeal. Therefore, the fact that defense counsel failed to object to a per se reversible error does not amount to prejudice under *Strickland*." (citation omitted)).

The test is whether it is reasonably probable that but for counsel's alleged deficiency, the outcome of the proceedings would have been different. *See Hilton*, 326 So. 3d at 648. As we've also recognized, "[t]he likelihood of a different result must be substantial, not just conceivable." *State v. McReynolds*, 400 So. 3d 865, 870 (Fla. 2d DCA 2025) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). The postconviction court appeared to apply this test; it considered the evidence against Mr. Walker, deemed it impossible to determine whether the State's closing and the general verdict form impacted the unanimity of the verdict, and concluded that there is a reasonable probability the outcome would have been different. Our de novo review leads us to conclude otherwise. There is no reasonable probability that the result would have been different but for counsel not objecting to the State's closing argument or the general verdict form.

The record shows that the trial court instructed the jury before closing arguments: "Please remember that what the lawyers say is not evidence or your instruction on the law." The trial court also instructed the jury after closing arguments that the "case must be decided only upon the evidence" and that the verdict "must be unanimous, that is, each juror must agree to the same verdict." The trial court further instructed the jury on the correct law it had to apply in reaching its verdict. And we must presume that the jury acted according to the law as instructed. *See Strickland*, 466 U.S. at 694; *see also Carter v. Brown*

9

*& Williamson Tobacco Corp.*, 778 So. 2d 932, 942 (Fla. 2000) ("[J]uries are presumed to follow the instructions given them.").

Additionally—and perhaps more significantly—"there is no reasonable probability that the jurors would have changed their minds" given "the overwhelming evidence of guilt presented" at trial. *See Allen v. State*, 261 So. 3d 1255, 1280 (Fla. 2019); *see also Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."); *cf. Reed*, 837 So. 2d at 369 (explaining that under the fundamental error doctrine, "whether the evidence of guilt is overwhelming . . . [is] not germane to whether the error is fundamental"). Three child victims testified against Mr. Walker, and they all provided similar accounts. Nothing they said conflicted, and two of the victims— including the victim pertinent to the count on appeal—provided nearly identical descriptions of what Mr. Walker said when they told him to stop. The jury also heard from Mr. Walker himself, who in multiple jail calls *not once* denied any of the allegations against him. He instead repeatedly asked for forgiveness and stated that he "messed up," "slipped," "f***ed up," "admitted to [his] mistakes," "admitted to [his] s**t," and "messed up real bad."

Furthermore, the only real defense Mr. Walker presented at trial was that the victims concocted their stories as part of a witch hunt. This was an all or nothing proposition for the jury—either everything the victims told the jury was made up, or the incidents described in their testimony actually happened. In light of this, it is unlikely—and not reasonably probable—that some jurors believed the victim was only telling the truth about the September 2016 incident while the remaining jurors believed only her testimony about the October 2016 incident.

10

As *Strickland* explains, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  466 U.S. at 693.  Rather, "the defendant must show that they actually had an adverse effect on the defense."  *Id.*  While counsel's nonobjection to the State's closing and the verdict form, if deficient, could have had some conceivable effect on the verdict, there is no reasonable probability that it had any actual effect or that the verdict would have been different but for counsel's actions.

Thus, the postconviction court erred in concluding that Mr. Walker established prejudice under Grounds Five and Eight.  It follows that the postconviction court's finding of cumulative error under Ground Nine "necessarily fails" as well.  *See Lukehart v. State*, 70 So. 3d 503, 524 (Fla. 2011) (quoting *Israel v. State*, 985 So. 2d 510, 520 (Fla. 2008)); *Hurst v. State*, 18 So. 3d 975, 1015 (Fla. 2009).

## IV.

To be entitled to postconviction relief based on ineffective assistance of counsel, Mr. Walker had to show that his counsel's alleged deficient performance prejudiced his defense.  Mr. Walker did not do so, and the postconviction court erred in concluding that he did.  We therefore reverse the order granting Mr. Walker's motion, and we remand with instructions to reinstate Mr. Walker's conviction and sentence on count one.

Reversed and remanded with instructions.

KELLY and KHOUZAM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.